Shannon Carter #70773
P.O. Box 208
Indian Springs, N.V. 89070

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

NOV 05 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY
DEPUTY

# UNITED STATES DISTRICT COURT DISTRICT

## OF NEVADA

Shannon Carter,

            Plaintiff,

Vs.

Bean et al.,

            Defendants,

Case No. 2:17-CV-01628-RFB-EJY

PLAINTIFFS MOTION FOR PARTIAL

SUMMARY JUDGMENT

Pursuant to Rule 56, Fed. R. Civ. P., plaintiff Shannon Carter request this court to grant him Summary Judgment as to the liability of defendants Bean, Bitar, Nash, Williams, Aranas, Buencamino, Stewart, Howell and Dzurenda for damages for denial to the Plaintiffs Substantive due process of law and the deliberate and indifferents to plaintiffs serious medical needs. The reasons therefor are set forth in the plaintiffs declaration and brief in support of this motion.

Dated this 30th day of, October ,2019

Shannon Carter
Shannon Carter #70773
P.O. Box 208
Indian Springs N.V. 89070

Shannon Carter #70773
P.O. Box 208
Indian Springs N.V. 89070

UNITED STATE DISTRICT COURT DISTRICT OF NEVADA

FILED
ENTERED
NOV 05 2019
COUNSEL/PARTIES OF RECORD
U.S. DISTRICT COURT
DISTRICT OF NEVADA

Shannon Carter
                    Plaintiff,

Vs.

Bean et al.,
                    Defendants,

Case No 2:17-CV-01628-RFB-EJY

DECLARATION IN SUPPORT OF PLAINTIFFS
MOTION FOR PARTIAL SUMMARY
JUDGMENT

1.) I am the plaintiff in the above-entitled case. I make this declaration in support of plaintiffs motion for partial Summary Judgment on my claims of Violations of Substantive Due process and deliberate indifferents to my Serious medical needs by defendants Bean, Bitar, Nash, Williams, Howell, Aranas, Buancamino, stewart and Dzurenda. (I have not moved for Summary Judgment on the retaliation claim because there are material factual disputes concerning that claim.)

2.) I am an inmate at Southern Desert correctional center. On february 20 2016 I first informed the defendants of my dental needs via medical kite responded to by defendant Bean

3.) Thereafter, over the next two months I informed the defendants multiple times through kites that my medical condition was turning for the worse extreme pain I.E. Swollen Jaw, chipping teeth, High Blood pressure, pain(9) out of (10) unable to eat or sleep please Help.

4.) At least (3) of theses kites where directly responded to by defendant Bean who's Job dutys consist of scheduling patients according to the needs of the institution in concert with the priorities of the applicable administration Regulations as seen in exhibit #1 (Employee work performance standards Form, Job element #1 Dental assisting)

5.) Ultimately, dispite multiple kites informing the defendants of my pain and need of treatment as seen in exhibit #2 (Kites to dental) I was not scheduled to see a dentist intill (61) days later by defendant Bean

6.) On 4.29.16 I was finely seen by the defendants ex-rayed and the defendant personally determined I had a serious medical need I.E. three teeth that warranted treatment teeth #18 #15 and 31# fillings as seen in exhibit #3 (Dental chart line dated 4.29.16)

7.) over the next several months I was in excruciating pain I informed defendants Stewart, Buencamino, and Aranas directly via grievances of dentals deliberate and Indifferents to my serious medical needs by dentals unwarranted delays of medical treatment and my need to be treated for issues determined by dental on 4·29·16 as seen in Exhibit # 4 (informal First and Second level grievances)

8.) Defendants Stewart, Buencamino and Aranas as grievance responders fail and or refused to properly investigate and ensure I recieved timely and appropriate medical attention dispite plaintiff directly pleading to them for help.

9.) Ultimately on 2·1·17 I was finely Scheduled to be treated for the last remaining tooth determined by the defendants warranted treatment on 4·29·16 almost a year prior.

10.) What can not be hindsighted is the fact that by this time the defendants have been made aware of 1.) Plaintiff had a serious medical need 2.) Plaintiff was in extreme pain and 3.) Plaintiff was requesting medical attention through multiple kites, grievances, 1983 civil suits, and plaintiffs medical chart.

11.) On February 1, 2017 I was placed on HDSP dental sick call list to be treated for the last remaining tooth that warranted treatment by the defendants on 4·29·16.

12.) Upon arrival to dental, defendant Bitar HDSP Head dentist asked me why I was there before I could answer, dental assistant, defendant Bean stated thats the cry baby who filed a lawsuit on me.

13.) Defendant Bitar then said they do not treat inmates who try to file lawsuits against them.

14.) I told defendant Bitar I was in a lot of pain and had been unable to eat and sleep regularly for months.

15.) Defendant Bean then stated that her husband was a L.I. and that I didnt know what pain was yet.

16.) I told Dr Bitar that the other dentist told me I had what I believed was an infected tooth that needed treatment. I then directly asked Bitar if he was going to treat me defendant Bitar responded by asking me if I was going to drop my lawsuit? I told defendant Bitar No! Bitar then stateded that then No I am not treating you, defendant Bean then Stated "Go back to your unit when you cant take the pain you'll be back". I was then escorted out of medical.

17.) I filed a grievance on the retaliation and denial of medical treatment that happen on February 1, 2017 stating I was still in extreme pain and clearly informing them of the ongoing constitutional Violation and my need of treatment.

18.) Defendant Nash improperly rejected my grievance as untimely then refused and or fail to inform dental of my need to be provided medical treatment. further Subjecting me to unnecessary wanton infliction of pain. see exhibit #5 (Improper grievance memo)

19.) I then filed a complaint in state court along with a TRO motion ultimately a TRO hearing was held at that hearing the defendants argued 1.) They had No idea why I was at dental on 2.1.17 and 2.) I never requested medical treatment only names for a Lawsuit.

20.) Dispite my attempts to explain to the state court H.D.S.P Policys which require all inmates to be escorted to dental And only inmates on dental sick call list to be treated for requested or recommended treatment could arrive to dental. Meaning that defendant Bitar and Bean who had been working at H D S P dental for over 9 years at that time New I was only there for requested or recommended treatment.

21.) Therefore, the defendants arguement that they didnt Know why I was at dental on 2.1.17 was not true they clearly new I was there for requested or recommended treatment either way the non-treatment by defendants Bitar and Bean on 2.1.17 mandated to be documented on a Refusal form if I was escorted to dental and not treated for whet ever reason on a scheduled appointment as seen in exhibit #6 (Refusal forms) This never happen on 2.1.17.

22.) By the time of my dental appointment on 2.1.17 I had filed multiple kites, grievances, and my medical dental chart clearly expressed my dental needs moreover, defendant Bean was served Summons and Complaint on 1.30.17 the day before my scheduled appointment on 2.1.17 specificly explaining my pain and need of treatment of the 3rd tooth see exhibit #7 (Affidavit of service)

23.) Ultimately State court did not understand (H.D.S.P) Polices and believed that now that the defendant new I was in pain and need treatment that I would be treated once back at H.D.S.P see exhibit #8 (TRO hearing Trans. State Court)

24.) Unfortunatly that was not the case. I would also like to point out defendant Dzurenda had also been served with Summons and Complaint by this time with full Knowledge of my pain and need of treatment as seen in exhibit #9 (motion to dismiss Pg. 3 of 9 lines 12-13)

25.) As NDOC director defendant Dzurenda refused to ensure my medical needs Where addressed Timely and appropriatly.

26.) On or about July 17 2017 a few days after the State court (TRO) hearing and still not treated by dental I personally informed defendant Williams of my medical issues with dental who informed me I would be seen by dental see **Exhibit** # 10 (Kite to warden)

27.) A few weeks later on yard I seen defendant Williams I informed him that I had still not been seen by dental "yet" Williams stated to me "you must have really pissed them off" and walked away defendant Williams was also with defendant Howell who just smiled. The two wardens failure to ensure I recieved requested and recommend medical treatment timely and appropriately resulted in me being Subjected to Further unnecessary wanton infliction of pain and ultimately permanent loss of two teeth.

28.) I filed a 1983 civil suit to the federal court along with a TRO ultimately a hearing was held in federal court.

29.) After this court reviewed the evidance on the face of the record the court order treatment within 14 days as seen in exhibit # 11 (TRO) Federal hearing)

30.) Finely after 2½ years of being Subjected to unnecessary wanton infliction of pain by the defendants via swelling jaw, bleeding gums, chipping teeth, extreme painful headaches, high blood pressure, unable to eat and sleep properly and two attempts of suicide due to the pain I was treated for my Serious medical need.

31.) Unfortunitely Due to the delays and or refusal of dental treatment 2 teeth ultimately had to be extracted as seen in the report sent to this court sealed by the defendants after TRO hearing.

32.) For the reasons stated in the brief Submitted with this motion, these undisputed facts establish that defendants Bitar, Bean, Nash, Howell, Williams, Stewart, Brencamino, Aranas and Dzurenda violated my substantive due process rights and was directly, deliberate and Indifferent to my Serious medical needs. Accordingly, I am entitled to Summary Judgment on my 8th amendment deliberate and Indifference and my 14th amendment Substantive due process claim.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 30th day of October, 2019

Shannon Carter

Shannon Carter #70773

PO Box 208

Indian Springs N.V. 89070

EXHIBIT # 1

EXHIBIT # 1



**DIVISION OF HUMAN RESOURCE MANAGEMENT**
**EMPLOYEE WORK PERFORMANCE STANDARDS FORM**

Supervisors are responsible for establishing the initial standards, but standards must be reviewed annually and amended when appropriate. The employee must be given the opportunity to provide comment when the standards are revised (NAC 284.468).

| Employee Name: | Last | | First | | MI | | Employee ID # | |
|---|---|---|---|---|---|---|---|---|
| Class Title: | Dental Assistant II (10.263) | | | | | | Date Standards Est/Rev: | |

| Department/Division: | | NDOC/Medical/ HDSP | | |
|---|---|---|---|---|
| Agency # (3 digits): | | Home Org # (4 digits): | | Position Control #: |

I have read and understand the work performance standards for this position. I understand these standards may be modified after discussion with my immediate supervisor and with the concurrence of the appointing authority.

Employee Signature:                                                    Date:

Supervisor Title & Signature:                                          Date:

Reviewing Officer Title & Signature:                                   Date:

Appointing Authority Title & Signature:                                Date:

| Job Elements (Defined as principal assignments, goals, responsibilities and/or related factors.) | *Weighted Value | Performance Standards |
|---|---|---|
| **Job Element #1: Dental Assisting** | 10% | |
| • Prepare and arrange dental instruments, materials and equipment appropriate for the planned procedure(s). <br> • Use four-handed dental assisting techniques. <br> • Clean and sterilize dental instruments according to current CDC standards. <br> • Clean and disinfect all dental operatory surfaces according to current CDC standards. <br> • Pour and trim models. <br> • Schedule patients according to the needs of the institution in concert with the priorities of the applicable Administration Regulations. | | • No exceptions <br> • Extensive knowledge of specialty procedures is above standard. <br> • Extensive knowledge of prosthetic lab procedures is above standard. <br> • Implementation of current infection control standards according to the latest CDC standards is mandatory with no exceptions. |
| **Job Element #2: Expanded Duties** | 10% | |
| • As stipulated by NRS 631, extended duties include: <br> 1. Remove sutures. <br> 2. Apply/remove periodontal pack. <br> 3. Take impressions for study models and of opposing arch. | | • Some experience with expanded duties is standard. <br> • Extensive experience with expanded duties is above standard. |

| Job Element #3:  X-Rays | 10% | |
|---|---|---|
| <ul><li>Expose intra-oral and extra-oral radiographs as directed by the dentist.</li><li>Process, mount and label radiographs.</li></ul> | | <ul><li>Assisting the dentist in the exposure of radiographs is standard.</li><li>Certification from the Board of Dental Examiners is above standard.</li></ul> |
| Job Element #4:  Patient Care | | |
| <ul><li>Receive and seat patient.</li><li>Clarify purpose of visit with patient.</li><li>Update patient medical history</li><li>Document any other pertinent information.</li><li>Explain and clarify basic information regarding treatment plan.</li><li>Explain the patient's responsibilities for continuing care.</li><li>Secure patient signature on informed consent forms for special procedures.</li></ul> | | <ul><li>No exceptions.</li><li>Compassionate and respectful treatment is standard.</li><li>Ability to translate common dental related questions and instructions is above standard.</li></ul> |
| Job Element #5:  OSHA and Safety | 10% | |
| <ul><li>Demonstrate knowledge of Bloodborne Pathogens Standard.</li><li>Practice barrier techniques and universal precautions.</li><li>Handle and dispose of sharps and hazard materials according to established State and federal OSHA standards.</li><li>Observe safe practices at all times.</li><li>Observe terms of safety of self, others, and care of Department property, equipment, and vehicles.</li><li>Follow Department accident reporting procedures.</li></ul> | | <ul><li>No exceptions.</li><li>Intentional non-compliance with OSHA standards is below standard.</li></ul> |
| Job Element #6:  Patient Instruction | 10% | |
| <ul><li>Provide basic oral hygiene instruction.</li><li>Demonstrate proper tooth brushing and flossing methods.</li><li>Discuss the importance of diet.</li><li>Provide patient appropriate pre and post-operative instructions.</li></ul> | | <ul><li>Distribution of oral hygiene instruction materials is standard.</li><li>Demonstration of oral hygiene techniques is above standard.</li></ul> |
| Job Element #7:  Supplies | 10% | |
| <ul><li>Maintain medical/dental supplies.</li><li>Assist in the inventory process.</li><li>Notify appropriate staff when supplies are needed.</li><li>Receive and store supplies and materials.</li><li>Maintain an accurate tool control inventory in accordance with the security practices of the institution.</li><li>Demonstrate knowledge of current procedures in the procurement of supplies and services.</li></ul> | | <ul><li>No exceptions</li><li>Maintenance of adequate supplies of critical materials is standard.</li><li>Ability to identify and implement cost saving buying techniques is above standard.</li><li>Non-compliance with current procurement procedures is below standard.</li></ul> |

| Job Element #8: Customer Service /Communication and PREA | 10% | |
|---|---|---|
| • Provide quality and quantity of information and service to co-workers and patients.<br>• Answer telephones; greet patients; answer general questions; refer callers/patients to appropriate personnel.<br>• Maintain and project an approachable, open-minded attitude and respect confidentiality to ensure open, two-way communication.<br>• Demonstrate knowledge of HIPPA standards.<br>• Ensure compliance of PREA regulations.<br>• Maintain current status on PREA training and updates. | | • Professional telephone demeanor is standard<br>• Non-compliance with HIPPA standards is below standard; No exceptions. |

| Job Element #9:  Work Ethic | 10% | |
|---|---|---|
| • Ability to prioritize tasks, estimate time frames, meet deadlines, plan and use available resources and coordinate work assignments with others.<br>• Maintain and possess proficiency with computer programs necessary to perform requirements of position. | | • Adequate organizational skills is considered standard.<br>• Exceptional independent abilities is considered above standard. |

| Job Element #10:  Professionalism | 10% | |
|---|---|---|
| • Follow NDOC's Personnel Code of Ethics outlined in AR339.<br>• Arrive to work on time, do not waste time or abuse sick leave.<br>• Display a professional demeanor at all times when interacting with staff and inmates.<br>• Be courteous and considerate.<br>• Avoid critical and argumentative statements.<br>• Observe the Chain-of-Command in all interactions and correspondence.<br>• Cooperate with and maintain a good relationship with operations and program staff.<br>• Provide quality and quantity of information and service to co-workers and external customers.<br>• Answer general questions; refer callers/visitors to appropriate personnel.<br>• Maintain and project an approachable, open-minded attitude and respect confidentiality to ensure open, two-way communication. | | • No exceptions.<br>• Participation in institutional committees is above standard. |

*If a weighted value is not designated, each job element has an equal weight.
**Distribution:  Original to Agency; Copy to Employee; Copy to Supervisor**

NPD-14 Est. 1/03
Revised 3/12

EXHIBIT #2

SIGNATURE: *Shannon Carter*                    ID# *70773*

(Also print name and ID# at bottom of form where indicated)

Institution: *H.D.S.P*      Date submitted: *2/20/16*      Unit/House: *10 C 27*

Medical: ☐      Dental: ☒      Mental Health: ☐      Nursing: ☐      Other: _____

Reason for request: (Describe below)

*I have been in prison since 2001 I have been to the denist (1) time I am feeling Pain in some of my back teeth I would like to have them cleaned and filled thank you*

---

### DO NOT WRITE IN AREA BELOW

Response to request:

**APPT. SCHED.**
**YOU'LL BE NOTIFIED THE**
**DAY OF APPOINTMENT**

☐ Appointment Schedule for: ___ / ___ / ___      Rescheduled for: ___ / ___ / ___
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen.  DOC 2523-Release of Liability signed

### PRESCRIPTIONS

☐ KOP      ☐ NON-KOP
☐ Order Date: ___ / ___ / ___

### PLAN

☐ Follow-up appointment ___ / ___ / ___      ☐ Return if needed
☐ No follow-up required

Signature/Title of Provider          *2/29/16*          Date

NEVADA DEPARTMENT OF CORRECTIONS

## MEDICAL KITE and/or
## SERVICE REPORT

NAME: *Carter   Shannon   D*
         Last          First          MI

ID# *70773*

DOC 2500 (03/14)

**INMATE REQUEST FORM**

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|---|
| Shannon Carter | 70773 | 10 C 27 | 3/5/16 |

4.) REQUEST FORM TO. (CHECK BOX)

___MENTAL HEALTH     ___CANTEEN

___CASEWORKER     ___MEDICAL     ___LAW LIBRARY     _X_DENTAL

___EDUCATION     ___VISITING     ___SHIFT COMMAND

___LAUNDRY     ___PROPERTY ROOM     ___OTHER_____

5.) NAME OF INDIVIDUAL TO CONTACT: _____

6.) REQUEST: (PRINT BELOW) I have a hole in my molar food and debree gets in the hole causing continuing Pain and Some times wakes me up from my Sleep. I am requesting to have it filled not Pulled can you Please appoint Me to come up as soon as Possible

Thank you

7.) INMATE SIGNATURE Shannon Carter     DOC # 70773

8.) RECEIVING STAFF SIGNATURE _____     DATE 3/5/16

9.) RESPONSE TO INMATE

APPT. SCHED
YOU'LL BE NOTIFIED THE
DAY OF APPOINTMENT

) RESPONDING STAFF SIGNATURE _____ DATE _____

DOC - 3012 (REV. 7/01)

## INMATE REQUEST FORM

| 1.) INMATE NAME          DOC #. | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|
| Shannon Carter   70773 | 10  C  27 | 3/30/16 |

4. ) __REQUEST FORM TO:__ (CHECK BOX)

___MENTAL HEALTH      ___CANTEEN

___CASEWORKER      ___MEDICAL      ___LAW LIBRARY      X DENTAL

___EDUCATION      ___VISITING      ___SHIFT COMMAND

___LAUNDRY      ___PROPERTY ROOM      ___OTHER_____

5.) __NAME OF INDIVIDUAL TO CONTACT:__ _Dental_

6.) REQUEST: (PRINT BELOW) _I First wrote a kite 2/20/16 about the Pain I am having in my teeth I then wrote a kite again 3/5/16 I am now writing a kite again on 3/31/16 my gums are now bleeding and swelling I havent eat in 3 days, havent slept in 4 the Pain is a (9) out of (10) I beleve its my back molars have holes in them foods geting in there need to be filled. Again cant sleep or eat Very Painful I need to be seen before is causing my blood pressur to be constitly elevated due to lack of sleep and stress_

7.) INMATE SIGNATURE _Shannon Carter_      DOC # 70773

8.) RECEIVING STAFF SIGNATURE _T & Anders_      DATE 3/30/16

**9.) RESPONSE TO INMATE**

_Referred to dental_

_Have you seen a sick call nurse until we can get you in?_      APR 01 2016

_APPT. SCHED_      _4/4/16_

**YOU'LL BE NOTIFIED THE**

**DAY OF APPOINTMENT**

) RESPONDING STAFF SIGNATURE _____      DATE _____

DOC - 3012 (REV. 7/01)

CARTER 779: Def. Resp. to RFPD [1] - 033

**INMATE REQUEST FORM**

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|---|
| Shannon Carter | 70773 | 10 ᶜ 27 | 4/8/16 |

4.) __REQUEST FORM TO__: (CHECK BOX)

___ CASEWORKER    ___ MEDICAL    ___ MENTAL HEALTH    ___ CANTEEN

___ EDUCATION    ___ VISITING    ___ LAW LIBRARY    X DENTAL

___ LAUNDRY    ___ PROPERTY ROOM    ___ SHIFT COMMAND

   ___ OTHER _____

5.) NAME OF INDIVIDUAL TO CONTACT: "Dental"

6.) REQUEST: ( PRINT BELOW) I have been requesting to be seen by Dental Since 1/20/16 my condition has turned for the worst my gums are swollen and bleeding food is geting in holes in my back teeth causing great Pain I havent been able to eat or sleep for weeks now this is causing my Blood Pressure to be Very High I receive a kite back from the denist sloting "refused dental" which is not true I have not been Contacted by anyone to refuse dental the kite also asked if I talked to a nurse which I have two times and she stated my blood Pressure is Very high So I need to write a kite which I am. I need to be seen to have my teeth filled Pain is (9) out of (10) cant eat or sleep Blood Pressure very High !

7.) INMATE SIGNATURE _Shannon Carter_     DOC # 70773

8.) RECEIVING STAFF SIGNATURE _____ DATE _____

**9.) RESPONSE TO INMATE**

If a nurse is telling you your blood pressure is high cant she provide an antibiotic and a pain pack until we can get you in?    4/13/16   CM

4/13/16 CM

**APPT. SCHED:**
**YOU'LL BE NOTIFIED THE**
**DAY OF APPOINTMENT**

10.) RESPONDING STAFF SIGNATURE _____ DATE _____

DOC – 3012 (REV. 7/0 )

INMATE REQUEST FORM

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|---|
| Shannon Carter | 7C773 | K   C 27 | 4/17/16 |

4.) REQUEST FORM TO  (CHECK BOX)

___MENTAL HEALTH      ___CANTEEN

___CASEWORKER      ___MEDICAL      ___LAW LIBRARY      X DENTAL

___EDUCATION      ___VISITING      ___SHIFT COMMAND

___LAUNDRY      ___PROPERTY ROOM      ___OTHER_____

5.) NAME OF INDIVIDUAL TO CONTACT: Dental

6.) REQUEST: (PRINT BELOW) I ~~first~~ First write a kite for dental 2/20/16 explaining my Pain in my back teeth due to holes in my molars since then I have wrote several more kites due to my condition decreasing I have not been able to sleep or eat due to this Pain which now is effecting my Blood Pressure I was seen by the nurse to have my Blood Pressure checked she stated it was Very High I told her my teeth have been causing me Pain havn't ate or slepted she stated write a kite to see the doctor which I did to no avail I received my blood Pressure refill from Pill call nurse I explained to her my Pain in my teeth and that I havn't ate or slept she told me she dont deal with "Dental" write a kite now I dont know what the procedures are for serious medical needs are but I need to be seen now I cant eat or sleep Pain is all day all night effecting my Blood Pressure

7.) INMATE SIGNATURE Shannon Carter      DOC # 7C773

8.) RECEIVING STAFF SIGNATURE _____      DATE _____

9.) RESPONSE TO INMATE

_____

_____

_____

_____

_____

10.) RESPONDING STAFF SIGNATURE _____      DATE _____

DOC - 3012 (REV. 7/01

EXHIBIT #3

CARTER, SHANNON          70773

| NAME | | DOB# | | MEDICAL ALERTS |
|---|---|---|---|---|

| DATE | PULSE&BP | SERVICES | SIGNATURE |
|---|---|---|---|
| 4/30/0? | | Exam Bw x (illegible) | (signature) |
| 10/24/08 | | T/m signed refusal (AB) | |
| 3/19/13 | | (illegible) persistent pain. (illegible) & Greavly | |
| | | (illegible) 1830 filed tx reviewed | |
| | | 3. (illegible) #30. | |
| | | RDr. no Motrin Pain Pack | (signature) |
| 4-Dec-12 | | Pt (illegible) w/ swelling + reduced | |
| | | (illegible) | |
| | | (illegible) left side #30 | |
| | | (illegible) IV D (illegible) | |
| | | (illegible) saline | |
| | | x-ray (illegible) RDr. Motrin Pain Pack | |
| | | (illegible) 500 mg x 28   2 start | |
| | | (illegible) 1 tab tid given NV | |
| | | Pt in (illegible) | (signature) |
| 2/8/13 | | Reviewed meds the P.O. visit Area | |
| | | #30 healing well. No inflammation | |
| | | or swelling. Patient felt ok, | |
| | | needed (illegible) to complete | |
| | | (illegible) during care Motrin | |
| | | pain pack 20 (illegible) 2 start 2 tab | |
| | | per pain | (signature) |
| 04/14/16 04/29/16 | | Pt (illegible) due to unit lockdown (illegible) | |
| | | (illegible) ATN. (illegible) gms blast pit + | |
| | | new fillings + #18, #19 #31 (illegible) | |
| | | caries - will (illegible) for x-(illegible) | |
| | | NV. #17, #19 (3) on (illegible) (illegible) | |
| | | RFC2 given (illegible) | |
| | | (illegible) pain. | (signature) |
| 06/16/16 #31 (O) | | (illegible) | |
| | | #31 has biggest cavity, upon (illegible) (illegible) | |
| | | (illegible) 1:100,000 (illegible) 2 carp - Lidocaine - Am- | |
| | | NV. (illegible) 4 PA's taken, told pt | |
| | | that #31 needs another tooth (illegible) if symptoms | |
| | | develop. | (signature) |
| | | N.V. Overtime | (signature) |
| 37/07/16 #19 (OO) | | (illegible) LP (illegible) 1:100,000 | |
| | | (illegible) 1 carp - Lidocaine - Am- (illegible) that #19 | |
| | | (illegible) further treatment if symptoms develop | |
| | | N.V. (illegible) (#3) | (signature) |
| 10-6-16 | | R/S EMERGENCY ROOM | (signature) |
| 2/1/17 | | Pt brought up for dental appt, but pt didn't | |
| | | know why he was scheduled. Did not | |
| | | have chart at time to review he. Dental | |
| | | (illegible) requested names for a civil suit | |
| | | only. Advised pt that info can't be | |
| | | released via kite form. Pt stated he | |
| | | already had all requested dental tx | |
| | | completed prior. | (signature) |

EXHIBIT # 4



*Medical*

. **State of Nevada**
**Department of Corrections**

10A

*INMATE GRIEVANCE REPORT*

**ISSUE ID#**   20063023297

**ISSUE DATE:**   05/10/2016

| INMATE NAME | | NDOC ID | TRANSACTION TYPE | ASSIGNED TO | |
|---|---|---|---|---|---|
| CARTER, SHANNON D | | 70773 | RTRN_INF | LSTEWART | |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 06/07/2016 | 5 | Denied | RZANER | A |

**INMATE COMPLAINT**

**OFFICIAL RESPONSE**

THE LAST TIME YOU SAW DENTAL WAS 4/29/16. IT WAS NOTED YOU NEED FILLINGS. BECAUSE OF THE MODIFIED LOCKDOWN ON UNIT 10 THE LIST OF I/M FROM UNIT 10 HAS GROWN. YOU ARE ON THE DENTAL LIST AND WILL BE SEEN AT THE NEXT AVAILABLE APPOINTMENT.

*[signature]*

GRIEVANCE RESPONDER   *LStewart CNII*

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.2
Run Date:   JUN-07-16 10:54 AM

Page 1 of 2

CARTER 779: Def. Resp. to RFPD [2]  - 048

Medical

Log Number 200-3023297

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: ShaNNoN Carter       I.D. NUMBER: 70773

INSTITUTION: H.D.S.P       UNIT: 10

GRIEVANT'S STATEMENT: H.D.S.P Dental Program and/or Policy is inadequate and Deliberate indifference to my serious medical needs I first informed "Dental" to the Pain in my teeth on 2-20-16 I was told I would be scheduled on 3-5-16 I informed "Dental" IN more detail of my issue that my back molars had and deface gets in the holes causing Pain and wakes me from my sleep and I need to be

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Shannon Carter       DATE: 5/3/16   TIME: 6 PM

GRIEVANCE COORDINATOR SIGNATURE: _____       DATE: 5-5-16   TIME: 8

GRIEVANCE RESPONSE: _____

_____

_____

_____

_____

CASEWORKER SIGNATURE: Stewart CWII       DATE: 6/15/16

____ GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____       DATE: 6-5-16

_____ INMATE AGREES ___X___ INMATE DISAGREES

INMATE SIGNATURE: Shannon Carter       DATE: 6-22-16

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

DOC 3091 (12 / 01)



# State of Nevada
# Department of Corrections

*INMATE GRIEVANCE REPORT*

i2FB3B

**ISSUE ID#**  20063023297

**ISSUE DATE:**   05/10/2016

| INMATE NAME | | NDOC ID | TRANSACTION TYPE | | ASSIGNED TO | |
|---|---|---|---|---|---|---|
| CARTER, SHANNON D | | 70773 | RTRN_L1 | | ABUENCAMINO | |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | | USER ID | STATUS |
|---|---|---|---|---|---|---|
| 1 | 07/26/2016 | 4 | Denied | | HSAMS | A |

| INMATE COMPLAINT |
|---|
| |

| OFFICIAL RESPONSE |
|---|
| Based on your medical records, on 8/16/16, you were evaluated, examined and given the necessary dental treatment (fillings) by the dentist. Several x-rays were performed and you were advised if any other symptoms develop, submit a kite and you will be scheduled accordingly. |

Grievance Denied.

Tito Buencamino DDN SI  8/1/16
*GRIEVANCE RESPONDER*

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.2
Run Date:   JUL-26-16 03:36 PM

Page 1 of 4

*Medical NB*

Log Number _200604023097_

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: _Shannon Carter_                I.D. NUMBER: _70773_

INSTITUTION: _H.D.S.P_        UNIT: _12-F-13_

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER _2006 3023097_ , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Shannon Carter_            DATE: _6·24·16_

WHY DISAGREE: _I informed dental to my serious medical need in february modified_ _lockdown was in April there was and is "No" reason it should have Taken_ _a 147 days to be treated for  A condition that was determined by_ _a dentist needed treatment. This Practice and or Police is Deliberate_ _and Indifferent to my Serious medical needs and must be addressed appropriately_

GRIEVANCE COORDINATOR SIGNATURE: _J. Lovell_        DATE: _6·27·16_

FIRST LEVEL RESPONSE: _SEE ATTACHED_

RECEIVED
JUN 2 7 2016
HDSP

_____ GRIEVANCE UPHELD   _____ GRIEVANCE DENIED   _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _Tod Williams_   TITLE: _ACW-1_   DATE: _8/1/16_

GRIEVANCE COORDINATOR SIGNATURE: _J. Lovell_        DATE: _7·26·16_

_____ INMATE AGREES _✓_   _____ INMATE DISAGREES

INMATE SIGNATURE: _Shannon Carter_            DATE: _8·5·16_

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:   To Inmate when complete, or attached to formal grievance
Canary:     To Grievance Coordinator
Pink:       Inmate's receipt when formal grievance filed
Gold:       Inmate's initial receipt

DOC 3093 (12/01)

8C/14A
coA1



# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**   20063023297                              **ISSUE DATE:**   05/10/2016

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| CARTER, SHANNON D | 70773 | RTRN_L2 | RARAÑAS |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 2 | 11/18/2016 | | Denied | VAUSTIN | A |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

Mr. Carter,
Based on your medical records, on 4/4/16, you were scheduled to see the dentist but unfortunately you were not seen because your unit was on lock down on that day for safety and security reasons. On 4/29/16, you had a dental consult. You were told that you need fillings on teeth #18,19 and 31 and pain medications were prescribed. On 6/6/16, filing was done based on the finding that this tooth had the largest cavity. X-rays were taken. Just like any other Department, inmate services and appointments will be provided using the priority system established by the institution dentist per AR 631. There other inmates waiting for their turn to be seen. A dentist may extract several teeth, or fill multiple teeth, or extract one tooth or fill one tooth depending on the case and the situation and time needed and available. You are advised to submit a kite about your dental complaint and service will be rendered appropriately and accordingly.
Grievance denied

Romeo Arañas, MD
Medical Director NDOC

DEC 1 4 2016

JAN 1 0 2017

*GRIEVANCE RESPONDER*

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.3
Run Date:   NOV-18-16 10:00 AM

Page 5 of 6

LOG NUMBER: 200620023297

# NEVADA DEPARTMENT OF CORRECTIONS
## SECOND LEVEL GRIEVANCE

NAME: _Shannon Carter_       I.D. NUMBER: _70773_

INSTITUTION: _H. D. S. P_       UNIT: _12 - F - 13_

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER _20063023297_ , ON THE
SECOND LEVEL. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION
IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Shannon Carter_       DATE: _8·9·16_

WHY DISAGREE: _It take 147 days to be treated for my serious medical needs_
_upon treatment the dental doctor determined I had 4 more cavitys yet refused to_
_treat them told me when I can No longer take the Pain Put in a kite. I informed_
_him I was in Pain and if I put in a kite they will charge me again when I already_
_here I was informed that I would be Put on a dental Plan this has not happen. Please Help!_

GRIEVANCE COORDINATOR SIGNATURE: _____       DATE: _8·10·16_

SECOND LEVEL RESPONSE: _____

RECEIVED

AUG 1 1 2016

HDSP

____ GRIEVANCE UPHELD ____ ✓ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740

SIGNATURE: _____ MD   TITLE: _MD_   DATE: _12 Jul 16_

GRIEVANCE COORDINATOR SIGNATURE: _____       DATE: _____

INMATE SIGNATURE: _____       DATE: _____

## THIS ENDS THE FORMAL GRIEVANCE PROCESS

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

RECEIVED

JAN 1 0 2017

HDSP WARDEN

DOC 3094 (12/01)

EXHIBIT # 5

EXHIBIT # 5



# Nevada Department of Corrections
## Improper Grievance Memo

Brian Sandoval
*Governor*

James Dzurenda
*Director*

Brian E. Williams, Sr.
*Warden, HDSP*

TO:      Carter, Shannon      #70773      8C/14

FROM:   J. Nash, AW

DATE:   4/18/2017

RE: Improper Grievance #2006-30-46164 IF Level Grievance

The attached grievance is being returned to you for the following reason(s):

| | This grievance may NOT proceed to the next level Per AR 740.03,5 due to the following: |
|---|---|
| ☐ | Non-grievable issue. |
| | ☐ State and federal court decision. |
| | ☐ State, federal and local laws and regulations. |
| | ☐ Parole Board decision. |
| | ☐ Lacks standing. |
| X | Untimely submission. |
| ☐ | Abuse of Inmate Grievance Procedure. |
| | ☐ Any language, writing or illustration deemed to be obscene, profane or derogatory. |
| | ☐ A threat of serious bodily injury to a specific individual. |
| | ☐ Specific claims or incidents previously filed by the same inmate. |
| | ☐ More than one (1) grievance per week, Monday through Sunday. |
| | ☐ More than two (2) unfounded, frivolous or vexatious grievances per month. |

| | After correcting the deficiencies(s) listed below; you may re-submit your grievance at the same level. |
|---|---|
| ☐ | The grievance contains more than one (1) appropriate issue.  Only 1 issue is allowed per grievance. |
| ☐ | No factual harm/loss noted and/or no remedy requested. |
| ☐ | Other; specify: |

Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.

CCSr BA                    4/4/17

**Witness Signature**         **Date**         **Inmate Signature**         4. 21. 17    **Date**

cc: Original – Inmate
    Copy - Grievance File

DOC-3098 (01/17)

CARTER 779: Def. Resp. to RFPD [2]  - 054

Log Number _2(or 3) 41,44_

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: Shannon Carter          I.D. NUMBER: 70773

INSTITUTION: H.D.S.P          UNIT: 8°14

GRIEVANT'S STATEMENT: "Retaliation", on or about February 1, 2017
I was placed on Dental sick call by the A.G.s office. to correct
a constitutional Violation by H.D.S.P Dental programs Deliberate
and indifference, refusing to treat my infected tooth Which was and
still is causing extreme pain lost of Sleep High blood Presure Weight lost from

**SWORN DECLARATION UNDER PENALTY OF PERJURY**

INMATE SIGNATURE: _Shannon Carter_     DATE: 4.6.17 TIME: 5:30

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 4-18-17 TIME: 11:05 AM

GRIEVANCE RESPONSE: _See attached response_
_Not accepted_

CASEWORKER SIGNATURE: _____ DATE: _____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____ DATE: 4/9/14

_____ INMATE AGREES ___✓___ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: 4·21·17

**FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.**

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

DOC 3091 (12 / 01)

EXHIBIT # 6

 

## RELEASE OF LIABILITY FOR REFUSAL OF HEALTH CARE TREATMENT

The undersigned inmate refuses recommended/scheduled healthcare treatment provided by NDOC at this time.  Refusing does not necessarily waive his/her right to subsequent health care.  Inmate has the right to accept or refuse health care offered at a later date.  DOC 2525 Directive to Physicians or other valid declaration shall be honored.

The health care treatment listed below were refused at this time:

### Check all that apply

☐ Infirmary Appointment for:

☒ Dental Appointment for: *rest of TX, Pt is not hav further pain + wishes to wait for any problms to arise.*

☐ Psychiatry/Psychology Appointment for:

☐ Physical Therapist Appointment for: _____

☐ Optometrist Appointment for: _____

☐ Medication (List) _____

☐ Chronic Care Clinic for: _____

☐ OSHA Protocol for TB/Bloodborne Pathogens: _____

☐ Other Describe: _____

COMMENTS: _____

I hereby release the Nevada Department of Corrections from any and all liability and responsibility that might result from my refusal of examination, treatment or testing described above; and further release any and all personnel from any and all liability and/or responsibility that might be incurred.

☒ **INMATE HAS BEEN INFORMED OF THE POTENTIAL ADVERSE MEDICAL CONSEQUENCES OF REFUSAL.**

I CERTIFY, I have read or had read to me the contents of this form.  This release has been signed under no duress and with full understanding of possible hazards which may occur due to refusal.

I further understand that I may be subject to disciplinary action up to and including being financially responsible for all expenses related to this refusal.

| | | |
|---|---|---|
| _Shannon Carter_ | 70773 | 11·7·18 |
| INMATE/STAFF SIGNATURE | ID# | DATE |
| _Carly Montz_ | | 11/7/18 |
| HEALTH STAFF WITNESS | | DATE |
| _signature_ | | 11/7/18 |
| HEALTH STAFF WITNESS ( If second witness necessary ) | | DATE |

NEVADA DEPARTMENT OF CORRECTIONS

## RELEASE OF LIABILITY FOR REFUSAL OF HEALTH CARE TREATMENT

NAME: _Carter     Shannon     D_
              Last         First       MI

ID# _70773_ INSTITUTION: _HDSP_

Reference Medical Directive 434

DOC 2523 (01/18)

**EFFECTIVE DATE: 04/2015**

# MEDICAL DIRECTIVE

**NUMBER:**   434
**TITLE:**   **CONSENT AND REFUSAL OF TREATMENT**

**PURPOSE:**

To provide guidelines within the Department for informed consent or refusal of medical, dental, or mental health treatment.

The informed consent of the inmate patient will be required for all examinations, treatments, and procedures governed by the informed consent standards of the community.

An inmate patient desiring treatment will be afforded the same right to bodily integrity and right to refuse examinations, treatments, and procedures as is standard in a community health care facility, except where specifically required by authority of competent jurisdiction.

**AUTHORITY:**

AR 638, AR 643

**RESPONSIBILITY:**

Medical Division staff has the responsibility to have knowledge of and comply with this procedure.

**DEFINITIONS:**

INFORMED CONSENT - The voluntary, competent consent of agreement to a treatment, examination, or procedure by the inmate patient after receiving the material facts regarding the nature, consequences, risks, and alternatives concerning the proposed treatment, examination, or procedure.

**PROCEDURES:**

**434.01 CONSENT AND REFUSAL OF TREATMENT**

1    Routine Treatments

- A signed consent will not be required for routine treatments provided in the medical and dental clinics, such as sick call, routine first aid, etc.

- The inmate patient has given implied consent through his or her written request to be seen, through presenting himself/herself for treatment, and by signing DOC 2544 Sign-In Sheet.

2.   Special Procedures

- The inmate patient will sign a written consent form authorizing treatment prior to receiving any type of invasive procedure or treatment beyond that of venipuncture.

- A member of the health care staff will also sign this form as a witness to the consent and then file the completed form in the medical record.

  ➢ Inmates are not allowed to witness legal documents, including consent forms.

3.   If an inmate patient consents orally to procedures, as outlined above, but refuses to sign the consent form, the invasive procedure or treatment will not be performed.

4.   Electroconvulsive therapy requires the written consent of the inmate patient and approval of an independent medical review panel, which includes a non-prison psychiatrist, or a Judicial finding of incompetence and approval of an independent review panel (See AR643).

5.   Refusal of Treatment

   A. In those cases where an inmate patient chooses to refuse treatment, DOC 2523 Release of Liability form shall be completed. The inmate patient should sign the form along with a health staff witness who acknowledges that the inmate patient read the refusal form or had it read in a language understood by the inmate patient.

   B. If an inmate patient refuses to sign the refusal form, NDOC Health Staff shall write "inmate refuses to sign" and then sign the form, documentation shall be made in the progress notes by a health care staff member.

   C. In addition to placing the refusal form in the medical record, documentation shall be made in the progress notes by a Health Care Staff member.

   D. In the case of a minor refusing treatment, the parent, guardian or legal custodian shall be consulted.

   E. The right of the inmate patient to refuse treatment may be waived under the following circumstances:

      - An emergency which requires immediate medical intervention for the safety of the inmate patient, including suicidal patients, self-mutilation, or the emergency care of inmate patients who do not have the capacity to understand the urgent need for treatment.

      - In cases where the refusal of treatment could potentially jeopardize the

CARTER 779: Def. Resp. to RFPD [2]  - 040

health and well being of other inmates or staff members, the inmate patient shall be medically quarantined. Inmates who refuse the intake physical examination, transfer screening or who are suspected of having a contagious illness shall not be housed in the general population until a determination is made as to their health status.

F. By refusing treatment at a particular time, the inmate patient does not necessarily waive his/her right to subsequent health care. The inmate patient has the right to accept or refuse health care offered at a later time.

G. Providers or nurses should counsel inmate patients against refusals of treatment, including inmates who repeatedly fail to keep clinic appointments.

H. DOC 2525 Directive to Physicians or other valid declaration shall be honored.

4.   Involuntary Treatment

A. Treatment beyond that required for the safety of the inmate patient or others in an emergency situation shall not be forced by the health care staff. For such cases, a court order for treatment may be sought by the Warden/Director after consultation with the treating physician. In all cases involving the forced treatment of an inmate patient, whether under emergency conditions for the safety of the inmate patient or otherwise, complete documentation shall be included in medical record.

B. An independent medical review panel shall review/approve/defer/disapprove any proposed use of forced medication and shall review any approval at least every 180 days. The panel shall consist of a psychiatrist, a psychologist and a Warden/designee (reference AR656 use of Psychotropic Medications).

**REFERENCES:**

National Commission on Correctional Health Care Standards 2014, P-I-05

_Romeo Aranas_                                             04/22/15

_____                    _____
Romeo Aranas, M.D., Medical Director                   Date

CONFIDENTIAL  _____    __X__
                          Yes        No

**THIS PROCEDURE SUPERSEDES ALL PRIOR WRITTEN PROCEDURES ON THIS SPECIFIC SUBJECT.**

CONSENT AND REFUSAL          MEDICAL DIRECTIVE # 434          Page 3 of 3
OF TREATMENT

EXHIBIT # 7

EXHIBIT # 7

# OFFICE OF THE SHERIFF
# CLARK COUNTY DETENTION
# CIVIL PROCESS SECTION

SHANNON CARTER                              )
                                            )
**PLAINTIFF**                               )        CASE No. A-16-747779-C
                    Vs                      )        SHERIFF CIVIL NO.: 17000481
S BEAN - DENTAL ASSISTANT, HDSP             )
                                            )
**DEFENDANT** _____       )        **AFFIDAVIT OF SERVICE**

STATE OF NEVADA      }
                     }  ss:
COUNTY OF CLARK      }

     NICK TOSCANO, being first duly sworn, deposes and says: That he/she is, and was at all times hereinafter mentioned, a duly appointed, qualified and acting Deputy Sheriff in and for the County of Clark, State of Nevada, a citizen of the United States, over the age of twenty-one years and not a party to, nor interested in, the above entitled action; that on **1/31/2017**, at the hour of **1:30 PM**, affiant as such Deputy Sheriff served a copy/copies of **SUMMONS and CIVIL RIGHTS COMPLAINT** issued in the above entitled action upon the defendant **S BEAN - DENTAL ASSISTANT, HDSP** named therein, by delivering to and leaving with Human Resources Administrator **KATIE GUTIERREZ** for defendant **S BEAN - DENTAL ASSISTANT, HDSP** at **NDOC-ADMIN OFFICE, 3955 W RUSSELL ROAD, LAS VEGAS, NV 89118** within the County of Clark, State of Nevada, said copy/copies of **SUMMONS and CIVIL RIGHTS COMPLAINT**

*I, DECLARE UNDER PENALTY OF PERJURY UNDER THE LAW OF THE STATE ON NEVADA THAT THE FOREGOING IS TRUE AND CORRECT.*

**DATED** February 1, 2017.

                                                Joseph M. Lombardo, Sheriff

*OWF*

                                By: _____
                                NICK TOSCANO
                                Deputy Sheriff

*[handwritten note in left margin: Day before visit Dr Baker said didnt know I was Suing dental under 8th]*

PO Box 553220      Las Vegas  NV   89155-3220   (702) 455-5400

EXHIBIT #8

Electronically Filed
3/25/2019 7:21 AM
Steven D. Gnerson
CLERK OF THE COURT

1  TRAN

DISTRICT COURT

CLARK COUNTY, NEVADA

* * * * *

6  SHANNON CARTER,                          )
                                            )   CASE NO.   A-16-747779
7              Plaintiff,                    )
                                            )
8  vs.                                       )   DEPT. NO.   II
                                            )
9  JOHN DOE HDSP DENTIST, DENTIST )
10  MANGAPITT, S. BEAN, JAMES              )   **Transcript of Proceedings**
    DZURENDA, STATE OF NEVADA,              )
11                                          )
                                            )
12             Defendants.      )

BEFORE THE HONORABLE RICHARD F. SCOTTI, DISTRICT COURT JUDGE

**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

TUESDAY, JULY 11, 2017

APPEARANCES:

   For the Plaintiff:   PRO SE

   For the Defendants:   THERESA M. HAAR, ESQ.
                         BARRACK T. POTTER, ESQ.

   RECORDED BY:      DALYNE EASLEY, DISTRICT COURT
   TRANSCRIBED BY:   KRISTEN LUNKWITZ

Proceedings recorded by audio-visual recording, transcript produced by transcription service.

1

MSJ Exs. 0055

1

## TABLE OF CONTENTS

2                                                                      <u>PAGE</u>

3

4 <u>WITNESSES:</u>

5     DR. PAUL BITAR

6         Direct Examination by Ms. Haar:          9

7         Cross-Examination by Mr. Carter:         17

8         Redirect Examination by Ms. Haar:        23

9     SHANNON CARTER

10        Q/A with the Court:                      5

11        Cross-Examination by Mr. Potter:         25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MSJ Exs. 0056

1      TUESDAY, JULY 11, 2017 AT 11:47 A.M.

2

3          THE COURT:  All right.  Let's go to page -- I

4   don't have Carter.  All right.  Carter -- *Shannon Carter*

5   *versus John Doe HDSP Dentist*, A-16-747779.  Well, this is a

6   civil matter, which I've put on the -- my criminal stack

7   because I wanted to have the presence of the defendant

8   here.  Appearances, please?

9          MS. HAAR:  Theresa Harr, 12158, on behalf of

10  defendants.

11         MR. POTTER:  Barrack Potter on behalf defendants.

12         THE COURT:  All right.  Very good.  And Mr. Carter

13  -- are you Mr. Carter?

14         MR. CARTER:  Yes.

15         THE COURT:  All right.  Very good.  And, so, a

16  couple things.  We have a renewed -- I think you did a

17  Renewed Motion to Dismiss.  Is that correct?

18         MR. POTTER:  I sent it over on OST, Your Honor.

19  It wasn't signed.

20         THE COURT:  I didn't have time to sign it.  I read

21  it; I didn't have time to sign it.  All right.  I guess we

22  can -- let's just deal with, then, with the Motion for

23  Temporary Restraining Order, I believe, and there's a

24  preliminary injunction as well.

25         MR. POTTER:  That's correct, Your Honor.

3

1          THE COURT:  All right.  So, Mr. Carter, I wanted

2   you here to present your argument on why you believe you're

3   not getting the care that you need and why you need the

4   State to step in.  So, let me ask you a couple questions

5   here.  Because, first of all, it looks like you had -- you

6   had, at one point, three teeth that needed fillings, number

7   18, number 19, and number 31, and you were prescribed pain

8   medication.  And, then, one of your fillings was done and

9   you still had two teeth that needed fillings and you

10  complained that you've been in pain.  You complained that

11  you've -- your gums have been bleeding, you've lost your

12  ability to eat and sleep, you lost weight, overall health

13  has been decreased, your blood pressure has been high, your

14  teeth are infected, and you still haven't been treated.

15  And because of the problem with your teeth, you've cut your

16  tongue.  I see these various allegations of harm here.

17          First of all, what I need to know is have your

18  teeth been fixed yet?

19          MR. CARTER:  No, sir.

20          THE COURT:  All right.  Tell me what's wrong with

21  your teeth.

22          MR. CARTER:  I have three infected --

23          THE COURT:  Well, let's swear you in in first.

24  So, I'm going to ask you to raise your hand and the Court

25  Clerk will administer an oath so your statements can be

4

1   taken under oath.  This is an evidentiary hearing on your

2   request for preliminary injunction.  Go ahead.

3                          SHANNON CARTER

4       [having been first duly sworn, testifies as follows:]

5           MR. CARTER:  Yes, ma'am.

6           THE COURT:  All right.  Tell me what's wrong with

7   your teeth.

8           MR. CARTER:  Yes, sir.  On April of 29th of last

9   year, a High Desert State Prison dentist determined I had

10  three infected teeth in my mouth.  It took 117 days to fix

11  the first one and it took about 150 days to fix the second

12  one.

13          THE COURT:  All right.

14          MR. CARTER:  When I was there, they wanted to

15  extract the teeth and I wanted to have them filled.  And I

16  don't think that they liked that.  I don't -- for some

17  reason, they didn't want to fill them, they wanted to

18  extract them.  But since I insisted on having them filled,

19  they fixed the two and I requested for them to fix the

20  third one, they never fixed it.  So, I'm sorry if -- I've

21  been going through a lot of pain.  I haven't really slept a

22  lot lately.

23          THE COURT:  All right.  So, how many teeth remain

24  unfixed at this point?

25          MR. CARTER:  One.

                                5

1          THE COURT:  And is that -- do you have a number

2    for that tooth out of -- do you know which number tooth

3    that is?

4          MR. CARTER:  I don't.

5          THE COURT:  All right.  So --

6          MR. CARTER:  I just know it's a back --

7          THE COURT:  -- and that tooth, is that tooth

8    presently infected?

9          MR. CARTER:  Yes, sir.

10          THE COURT:  All right.  And is it causing you any

11    discomfort or pain?

12          MR. CARTER:  I couldn't -- I haven't slept that

13    good for the last week or two.

14          THE COURT:  When -- how long has, you know, the

15    medical staff over there known that that tooth has been

16    infected?

17          MR. CARTER:  Since last year of April, Your Honor.

18          THE COURT:  What's the reason that they've given

19    you as to why it hasn't been fixed?

20          MR. CARTER:  Well, I was sent by the Attorney

21    General's office in February of this year to have it fixed.

22    And when I got up there, they called me crybaby, they

23    threatened me, --

24          THE COURT:  All right.

25          MR. CARTER:  -- they said that they weren't going

6

MSJ Exs. 0060

1   to fix my tooth or operate on me.   They don fix teeth for

2   inmates who try to file lawsuits.

3          THE COURT:   Okay.

4          MR. CARTER:   And, at first, I though, you know,

5   this has got to be a joke or something.   Right?   So, then,

6   they were like:   Look, if you're not going to drop your

7   lawsuit, we're not going to fix your teeth.

8          THE COURT:   Well, so, do you have anything

9   scheduled now to have it fixed?

10          MR. CARTER:   No, sir.

11          THE COURT:   All right.

12          MR. CARTER:   If it wasn't for this court date, I'd

13   still be sitting in the cell going through pain right now.

14          THE COURT:   All right.   So, let me ask counsel for

15   the State, are there any questions that you would like to

16   ask Mr. Carter?   You may ask him any questions now on

17   cross.

18          MR. POTTER:   Thank you, Your Honor.

19          THE COURT:   And I wasn't direct examining him, I

20   was just trying to help him since he's pro per and

21   eliciting the information that he has in his paperwork.

22          MS. HAAR:   We've also brought with us the dentist

23   from High Desert State Prison --

24          THE COURT:   Okay.

25          MS. HAAR:   -- who is in the hallway and ready to

7

1  testify if you have questions for him as well.

2          THE COURT:  That'll be helpful, too.   Thank you.

3          MR. POTTER:  Thank you, Your Honor.

4          THE COURT:  So -- and you can either examine him

5  now or put the dentist on first.   Whatever you'd like to

6  do.

7          MR. POTTER:  We're going to put the dentist on

8  first, then call the plaintiff.

9          THE COURT:  All right.   Why don't you go ahead and

10 have a seat, sir?   And we're going to call the dentist to

11 the stand.   You may.

12         MS. HAAR:  Thank you.

13         THE COURT:  Yes, sir.   Please -- Thank you,

14 Marshal.  I appreciate it.   All right.   Remain standing.

15 The Court Clerk needs to administer an oath.

16                          **PAUL BITAR**

17     [having been first duly sworn, testifies as follows:]

18         THE WITNESS:  I do.

19         THE CLERK:  Can you please state and spell the

20 name for the record?

21         THE WITNESS:  My name is Dr. Paul Bitar, B-I-T-A-

22 R.

23         THE COURT:  Please be seated.   And the Court Clerk

24 will -- wants you to spell your name for us.   Did you spell

25 the whole thing?   I'm sorry.

8

1        THE WITNESS:  Paul, P-A-U-L, Bitar is the last

2   name, B-I-T-A-R.

3        THE COURT:  All right.  Thank you, Doctor, for

4   being here, appreciate it.  Counsel, you may proceed.

5        MS. HAAR:  Thank you, Your Honor.

6            **DIRECT EXAMINATION OF PAUL BITAR**

7   BY MS. HAAR:

8        Q    And how are you currently employed, Dr. Bitar?

9        A    I'm the Senior Institutional Dentist at High

10  Desert State Prison.

11       Q    And how long have you been a dentist with High

12  Desert State Prison?

13       A    Almost nine years.

14       Q    And let's talk about the process of how we go from

15  an inmate identifying having tooth pain to actually being

16  in your chair.  Walk me through that process step-by-step

17  of what that would look like.

18       A    Well, typically, they fill out a medical kite.

19  Depending on what the issue is, whether it's medical,

20  dental, or psych, they mark the box, they explain what

21  their issue is, and it gets submitted.  Usually, a nurse

22  complies all the kites from the units, brings it to the

23  infirmary, we go through them and, based on the dates of

24  the kites, we schedule them appropriately.  Also, it's

25  based on priority a little bit.  We do take emergencies and

9

MSJ Exs. 0063

1   infections a little more seriously than other things like

2   dentures.  But, typically, it's done by the date off the

3   kite.

4       Q    And how many patients can you see in any given

5   day?

6       A    Typically, we see between 15 and 30, depending on

7   the day.

8       Q    And how many inmates are incarcerated at High

9   Desert State Prison?

10      A    I'm not sure the exact number but it's around

11  3,700, 3,800 inmates.

12      Q    And how many inmates a High Desert have dental

13  problems?

14      A    Right now, we have at least several hundred kites

15  that need to be addressed.

16      Q    So, do you have a timeline for between when an

17  inmate kites to see the dentist and, best case scenario,

18  when you would like to have them seen by?

19      A    Typically, within 60 days is what we respond on

20  the kites.  So, if they put a kite in, by the time we

21  receive it and respond, it's usually within a couple months

22  of that response.

23      Q    And have you had the opportunity to review Mr.

24  Carter's dental chart?

25      A    Yes.  I have.

10

MSJ Exs. 0064

1          MS. HAAR:  May I approach the witness, Your Honor?

2          THE COURT:  Yes.

3    BY MS. HAAR:

4          Q    This was Exhibit 1 to the State's Opposition.  Do

5    you recognize this, Dr. Bitar?

6          A    Yes.  I do.

7          Q    What do you recognize this to be?

8          A    This is the typical dental chart that we all use

9    on every single patient that we have.

10         Q    And, all right, let's start from about halfway

11   down.  Because, in his preliminary injunction, he states

12   that he started kiting for dental on February 29th, 2016.  I

13   -- can you identify for me the first visit after February

14   of 2016?

15         A    Well, he was scheduled April 14th, I believe, and

16   there is some unit lockdowns so we rescheduled him to the

17   21st of April.

18         Q    And I know it's a really rough copy but can you

19   tell me what -- that April of 2016, what was identified and

20   what was done?

21         A    On the 24th?

22         Q    Yes, please.

23         A    He had an exam of three teeth.  They had found

24   occlusal caries, which are just decay on the tops of the

25   teeth, and was scheduled for fillings.  He was given a pain

                              11

MSJ Exs. 0065

1    pack of ibuprofen and that was about it on that date.

2         Q    Is there anything on that entry that identifies an

3    infection?

4         A    No.

5         Q    Can you read for me the next time that he was seen

6    by dental?

7         A    I can't read that date.  But, on that day, he had

8    a filling of number 31.  It was the largest cavity upon

9    examination, so we decided to do that one first so it

10   didn't proceed into anything worse that would require it to

11   be extracted.

12              THE COURT:  I'm sorry.  What date was that?

13              THE WITNESS:  I can't read that.

14              THE COURT:  Of the filling?

15              THE WITNESS:  The one after the April 24th -- is

16   that --

17              MS. HAAR:  June --

18              THE WITNESS:  June 16th.

19              MS. HAAR:  June 16th, 2016.

20              THE COURT:  Okay.

21              THE WITNESS:  He was given anesthetic, they had

22   done the filling, and the next visit was to continue

23   fillings.

24   BY MS. HAAR:

25        Q    And, then, was he seen again after the June 2016

12

1   visit?

2       A    He was seen, it looks like September 5th and had

3   another filling on number 19.  And same process.  And,

4   then, it was noted for his next visit to do number 3.

5       Q    And was there any indication that he was suffering

6   from an oral infection at that time?

7       A    No.

8       Q    And was he scheduled to be seen again for that

9   last --

10      A    Yes.  He was scheduled for October 6th but there

11  was some kind of emergency recall in the yard.  And, then,

12  he was brought in February 1st of this year and that's when

13  I first saw him.

14      Q    That was your first interaction with him?

15      A    Correct.

16      Q    And was he treated at that time?

17      A    When he first came in, he said that he had

18  completed all treatment and he didn't know why he was

19  there.  And he just proceeded to ask for the names of some

20  of the staff in regards to a lawsuit.

21      Q    And if an inmate does not submit a kite to request

22  to be seen by medical and, particularly here, dental, is

23  he's [sic] going to be scheduled to be seen?

24      A    If there is no kite, no.

25      Q    And, in reviewing his medical file, are you aware

1 of any kites after February of 2017 where he requested

2 dental treatment?

3   A No.

4   MS. HAAR:  I have no more questions for this --

5   THE COURT:  So, I'm just a little confused.  You

6 know, looking at this inmate grievance history, there's a

7 reference, then, on November 18, 2016.  I guess that was

8 before you because your first visit was 2-1-17.  But this

9 11-18-16 official response from the State says that he

10 still needed fillings on teeth number 18, 19, and 31 and

11 one was done.  And that -- I'm assuming that would leave

12 two more that remain to be done.  And, so, when do those

13 get done?  Because I heard you mention stuff before

14 November 18, 2016.  But, see, this entry here talks about

15 three -- you can take a look.

16   MS. HAAR:  May I?  Thank you.

17   THE COURT:  Yeah.  Three that still need -- or

18 that were referenced in that November 16th notation.  You

19 can show him that, I'm -- I don't have any other writing on

20 that that's important.

21   MS. HAAR:  The informal --

22   THE COURT:  So, when did those get -- when did

23 those get taken care of?

24   THE WITNESS:  Well, two of those three were

25 mentioned --

MSJ Exs. 0068

1        THE COURT:  So, it looks like one still needed to

2   be done.

3        THE WITNESS:  One is correct.  And on that

4   February date, he did not mention he needed anything else.

5   So --

6        THE COURT:  So, it was mentioned, I guess, in

7   November but, then, he came back and forgot about it, or it

8   stopped hurting him, or what?

9        THE WITNESS:  I have no idea.  You'll have to ask

10  him that.

11       THE COURT:  Okay.  Okay.

12       MS. HAAR:  Your Honor, if I may clarify one thing

13  about the grievance report?

14       THE COURT:  Yeah.

15       MS. HAAR:  The original grievance was submitted in

16  May and they go through an informal, a first level, and a

17  second level grievance.

18       THE COURT:  Right.

19       MS. HAAR:  So, simply to exhaust the grievance

20  process in order to bring a lawsuit, he would have had to

21  have continued the grievance.  The initial grievance --

22       THE COURT:  I see.

23       MS. HAAR:  -- was in May, which well predated.

24  And, so, even though he's continuing to exhaust his

25  administrative remedies, the original grievance was from

MSJ Exs. 0069

1    May, the informal level was submitted in May.

2            THE COURT:  I see.  Okay.  So, that 11-18 entry is

3    simply just more --

4            MS. HAAR:  A follow-up.

5            THE COURT:  -- a follow-up.  And that other tooth

6    could have been fixed prior to that date.

7            MS. HAAR:  Yes, Your Honor.

8            THE COURT:  All right.  So, I guess your position

9    right now is you're not aware of any present request for

10   filling treatment by this defendant as pending?

11           THE WITNESS:  Correct.  Except when I read the

12   notes after he had left and we had talked and it was noted

13   that he had that one last filling that was noted in

14   September and that's why he was supposed to be seen in

15   February.  I kind of find it odd that he said all treatment

16   was completed.

17           THE COURT:  So, there might -- so he might need a

18   filling.  So, what would be -- if he were to submit another

19   request to have that looked at, it would be your practice

20   to get it scheduled within the next 60 days?

21           THE WITNESS:  Correct.

22           THE COURT:  And analyze his condition and need for

23   treatment and schedule him for treatment in due course,

24   then?

25           THE WITNESS:  Correct.

MSJ Exs. 0070

1       THE COURT:  All right.  All right.  Very good.

2  Thank you.

3       MS. HAAR:  Thank you, Your Honor.

4       THE COURT:  I'm going to -- you're going -- I'm

5  going to ask you to stay there.

6       THE WITNESS:  Okay.

7       THE COURT:  And, now, the plaintiff here, Mr.

8  Carter, has a chance to ask you any questions.  Do you want

9  to ask the doctor any questions?

10       MR. CARTER:  Yes, sir.  I would like to, sir.

11       THE COURT:  All right.  You may.

12              **CROSS-EXAMINATION OF PAUL BITAR**

13  BY MR. CARTER:

14       Q    Dr. -- what was it again, sir?

15       A    Bitar.

16       Q    Bitar.  Sir, is there anything as a follow-up

17  program that you guys have at dental at High Desert?

18       A    A follow-up program?

19       Q    Yeah.  Follow-up care or a follow-up program for

20  inmates that come up and may need more treatment than, you

21  know, the one day allowed or --

22       A    Most inmates require multiple days of treatment,

23  as you are well-aware.  We do not have the capacity to

24  create a book of treatment plan and a book of kites.  So,

25  we go purely off the kite system.

17

1    Q    Okay.  So, there's no follow-up?  So, if you

2  determine somebody needs five cavities, so you can't do

3  them all today --

4    A    You will re-kite after every visit.

5    Q    -- you don't have a follow-up care?

6    A    We re-kite after every visit.

7    Q    Re-kite.  And you said the re-kite takes up to,

8  what, 60 days I think it was?

9    A    When the time we receive the kite.  Yes.

10   Q    About 60 days.  So, for somebody going through

11 extreme pain with a tooth, you think 60 days is an adequate

12 time to have them wait?

13   A    Well, most people on the outside wait a lot longer

14 than that to see their dentist.  So, it's all relative.

15 But your last filling is minor and we have completed the

16 two fillings that were the largest that would cause any

17 particular pain.  So, the fact that you have pain

18 currently, I'm -- I don't really see that.

19   Q    Okay.  Okay.  So, a year wait for a teeth that --

20 not you but the other dentist decided needed treatment.

21 That's -- do you believe that's accurate?

22   A    A year wait?

23   Q    Yeah.

24   A    From when?

25   Q    Because it was determined on April 29th that it was

18

1  three infected teeth, which warranted treatment.

2      A    They were not infected.

3      Q    Okay.

4      A    If they're infected, you do not do fillings on

5  infected teeth.

6      Q    Excuse me.  I apologize.  Three teeth that

7  warranted fillings?

8      A    Correct.

9      Q    So, once they're determined that they need

10 treatment, a year wait, you think, is adequate you're

11 saying?

12     A    You haven't waited a year.

13     Q    Well, April 29th, 2016 until now is a little over a

14 year.

15     A    You've been seen three times.

16     Q    Okay.  But I was -- I came up on February and you

17 told me that you weren't going to treat me until I dropped

18 my lawsuit.  Is that correct?

19     A    No.  I asked you what your name is to sign in and

20 you were confused as to why you were there because you've

21 had all your treatment completed.

22     Q    And, then, you -- and, then, what happened after

23 that?  You informed me that the AG's office sent me up

24 there?

25     A    I didn't inform you.

1    Q    No -- no one informed you of that?

2    A    The AG called after you had been seen and I had

3    told them what had happened.  And he was confused because

4    you still had a filling to be done, according to your

5    lawsuit.

6    Q    Okay.  Well, on February 1st, the AG's office sent

7    me up there to get treatment.  And I talked --

8              MR. POTTER:  Objection, Your Honor.

9              MR. CARTER:  I talked to you --

10             THE COURT:  Sir, hold on, sir, one second.

11             MR. POTTER:  The plaintiff is testifying.  Does he

12    have a question?

13             THE COURT:  Well, you know what, he is testifying.

14    I'll allow him a little bit of leeway since it's pro per

15    and he's not familiar with court proceedings.  And I'll

16    treat this as testimony from him under oath out of order.

17    All right.  But let's get to -- this is the time for asking

18    questions, not presenting --

19             MR. CARTER:  Okay.

20             THE COURT:  -- your statements.  Okay?

21             MR. CARTER:  Yes, sir.  Yeah.

22             THE COURT:  So, just stick to questions.

23    BY MR. CARTER:

24    Q    Okay.  Is there a policy when an inmate is placed

25    on dental sick call to be treated?  Is he just allowed to

MSJ Exs. 0074

1   come up and refuse treatment?

2       A    You are allowed to refuse treatment.

3       Q    Is there anything that goes with that?

4       A    Usually, there's a refusal form.

5       Q    February, would -- did you have me sign a refusal

6   form, sir?

7       A    When you state that there's no treatment left to

8   do, what are you refusing?

9       Q    Well, obviously, I was placed on a list -- on the

10  dental sick call list for treatment.  Right?

11      A    Correct.  And, then, when I reviewed a kite that

12  was in January, you had just wanted some names on a civil

13  suit.

14      Q    So --

15      A    You didn't express anything about a last filling

16  to be done, or any pain, or anything on that kite.

17      Q    So, what you're saying is that I was placed on the

18  dental sick call for treatment, I refused, and you told me

19  to go back to my unit?

20      A    You didn't refuse.  You said there is no treatment

21  to be done.

22      Q    Okay.

23      A    You can't refuse treatment that's not to be done.

24           MR. CARTER:  May I show you this, Your Honor?

25           THE COURT:  Yeah.  Off -- Marshal?  Let me take a

MSJ Exs. 0075

1  look at that.

2          Well, it's a document, you're showing me a

3  document that says:  Release of Liability for Refusal of

4  Health Care Treatment.  It's blank.  It just has an X and

5  is written void on it.

6          MR. CARTER:  Yes, Your Honor.  I --

7          THE COURT:  What did he give -- so, don't testify.

8  You can ask him questions about this.

9          MR. CARTER:  Okay.  What --

10          THE COURT:  Your -- Marshal, give that to the

11  witness.

12          MS. HAAR:  May I see it briefly?

13          THE COURT:  Yes.

14          MS. HAAR:  Thank you.

15          THE COURT:  All right?

16          MS. HAAR:  Okay.  Thank you.

17          THE COURT:  You can ask him --

18          MR. CARTER:  Okay.

19          THE COURT:  -- some questions about it.  See if he

20  knows what it is and who wrote that.  All right?

21  BY MR. CARTER:

22      Q    Down there -- all that is is a form.  It's just a

23  form.

24      A    Uh-huh.

25      Q    I'd like to know if -- it says other.  It says

22

MSJ Exs. 0076

1  dental -- it states other medical needs and it states that

2  if inmates are placed on a dental -- or on medical list,

3  that you're to sign this if you refuse treatment.  Correct?

4      A    Correct.

5      Q    I'd like to know why I didn't sign one of those or

6  why you didn't give me one of those if I refused treatment?

7      A    Again, if you came in with a problem, let's say

8  for example that number 3, you want it done, or you wanted

9  it extracted, or I wanted -- I told you that it needed to

10  be extracted and you said, no, I don't want to have it

11  extracted, that is when you sign a refusal form.  After

12  I've given you particular options on it -- on how to handle

13  a tooth.  When you come in and say that I don't know why

14  I'm here, I've had all my treatment done, then that, to us,

15  sounds like there was a scheduling error.  And when I read

16  your kite from January, it mentioned nothing about a tooth,

17  so there's no treatment to refuse.

18          MR. CARTER:  Okay.  That's all I have for him.

19          THE COURT:  All right.  Anything follow-up from

20  the State?

21          MS. HAAR:  I have very brief follow-up.

22              **REDIRECT-EXAMINATION OF PAUL BITAR**

23  BY MS. HAAR:

24      Q    We've had some discussion on infections versus

25  cavities.  How would those be scheduled differently in a

MSJ Exs. 0077

1  priority system?

2       A    Infections are a high priority.  Typically, when

3  the tooth is -- has extensive decay and it's into the nerve

4  and, then, it causes an infection, it can spread, it can

5  cause cellulitis, those things are more important.  So,

6  obviously, we treat those with more higher priority.

7  Cavities, small caries lesions, those typically take years

8  to accrue to the point where the tooth would need to be

9  assessed and treated appropriately.

10      Q    And have you reviewed Mr. Carter's X-rays?

11      A    Yes.  I have.

12      Q    And, in reviewing those X-rays, did you find any

13  of the remaining cavity that still needs to be filled?

14  What is its condition?

15      A    It is a minor cavity that's had time to be

16  treated.  Obviously, the two that were done previous were a

17  little bit larger and that's why those two were taken care

18  of prior.

19      Q    And a small cavity of this size, do you expect it

20  to be causing excruciating pain, loss of sleep, inability

21  to eat?

22      A    No.

23           MS. HAAR:  Thank you.  No further questions.

24           THE COURT:  All right.  Thank you, Doctor.  Thank

25  you for your time and you're excused, sir.

24

1        You didn't have any follow-up.  Did you?  I didn't

2 --

3        MR. CARTER:  No.

4        THE COURT:  Okay.

5        MR. CARTER:  If I could get that back?

6        THE COURT:  You'll get your paperwork back.  All

7 right.  So, now, let me ask the State if they had any

8 questions.  Thank you.

9        MR. POTTER:  I do, Your Honor.

10        THE COURT:  Any questions for Mr. Carter?

11              CROSS-EXAMINATION OF SHANNON CARTER

12 BY MR. POTTER:

13    Q    So, it's your testimony today that on your

14 February 1st, 2017 appointment, dental refused to treat you.

15 Is that correct?

16    A    Yes, sir.

17    Q    Which is contrary to the testimony that we just

18 heard from the dentist.  Is that correct?

19    A    Yes, sir.

20    Q    Is it also true that you were convicted of

21 statutory sexual seduction, a felony, in October of 2001?

22    A    Yes, sir.

23    Q    Were you also convicted of kidnapping in that same

24 case in 2001?

25    A    Yes, sir.

MSJ Exs. 0079

1    Q   Also in 2001, were you convicted of domestic

2 battery, a felony?

3    A   Yes, sir.

4    Q   Along with that case, were you also convicted of

5 kidnapping, a felony?

6    A   Yes, sir.

7    Q   Isn't it true that you haven't submitted any kites

8 since January 6, 2017?

9    A   January 6th --

10    Q   Yes.  That's the kite where you said that you

11 wanted dental assistants' names for your civil lawsuit?

12    A   Kites?

13    Q   Yes.  That's correct.

14    A   I'm not sure.  It may have.  It may have.

15    Q   Okay.

16    A   I'm not positive on that.

17    Q   And, so, earlier when you were alleging that you

18 were in excruciating pain in the April time frame before

19 you were seen then, had you not sent multiple kites in to

20 dental --

21    A   Yes.

22    Q   -- talking about your pain?

23    A   Yes.

24    MR. POTTER:  Okay.  That's all the questions I

25 have, Your Honor.

26

1       THE COURT:  All right.  Thank you. So, I

2  appreciate everything from everybody.  I'll give you guys

3  each like another thirty seconds to a minute for last word.

4  The State can go first and, then, the plaintiff can go.

5       MS. HAAR:  Thank you, Your Honor.  For a

6  preliminary injunction, first and foremost, the standard is

7  a likelihood of success on the merits.  And, on the merits

8  here of a deliberate indifference claim, it's not even a

9  claim of malpractice or negligence, it's does the dentist

10  know of a serious medical need and, then, has consciously

11  disregarded that need and intentionally and willfully

12  denied medical treatment?  And here, quite simply, the

13  medical record shows that every time he kited to dental,

14  requested to be seen, he was in fact seen.  The dentist

15  can't force him to have more treatment if he's not

16  requesting treatment to be done.

17       And, so, here, from a deliberate indifference

18  standpoint, the dental department at High Desert has not

19  been deliberately indifferent and therefore the likelihood

20  of success on the merits isn't there and doesn't warrant

21  the issuance of a preliminary injunction.

22       THE COURT:  Thanks.  Last word from you, sir?

23       MR. CARTER:  Your Honor, they've -- High Desert

24  State Prison first knew that I needed dental attention in

25  February 2016.  In April of 2016, they determined I needed

27

1   treatment.  I know I might have -- I'm not a dentist so I

2   said an infection but all I know is that they were -- I was

3   in pain.  They determined I needed treatment on all three

4   teeth, sir, not one, not two, but three teeth.  They

5   treated two of them.  I filed multiple grievances, multiple

6   kites, informing them of the pain I was going through and

7   that I needed treatment.  On February 1st, I was sent to

8   dental for a dental call sick called in by the AG's office.

9   And I understand that he stated that for some reason he

10  didn't know that I -- what I was there for.  But they knew

11  who I were -- who I was, they knew I had filed multiple

12  grievances, they knew I had filed multiple kites

13  complaining about their office, they knew I filed a civil

14  lawsuit, and they knew I was in pain.

15         When I went up there February 1st, I asked for help

16  and I asked for them to treat me and they told me that they

17  would not treat me and they called me a crybaby.  They

18  never had me sign a refusal.  He's stating that I came up

19  there out of the blue, which we're not allowed to do, you

20  can only get there if you request some kind of medical

21  care.  So, they knew I was there in need of some kind of

22  attention.  They never treated me.

23         After that, I was scared because they -- I didn't

24  know what to do.  Once the AG's office sent me up there to

25  get treated and they didn't treat me, I didn't know what to

MSJ Exs. 0082

1   do.

2         So, a few -- maybe a couple weeks later, or awhile

3   later, I filed a grievance again and I told them about the

4   issue that happened on February 1st, that they wouldn't

5   treat me, and that they called me a crybaby and everything

6   that happened and, then, they just denied my grievance.

7   They didn't send me up to medical to get treated and I have

8   that grievance here where I asked them to help and fix my

9   tooth again and they won't fix it.  They won't give me the

10  dental care.

11        He's saying that it's a cavity, I can't -- the

12  other night, I tried to pull it out.  It's hurting so bad.

13  I don't know what to do.  All I want is to get adequate

14  dental care.  That's it.  Now I'm scared to death because

15  now if I go back, that's the head dentist right there.

16  Now, I go back to High Desert, I can't go back to his

17  office.  And they're going to keep saying that, oh, this

18  crybaby, he got us in court and this and that, and they're

19  not going to fix my teeth.  And, then, they got this big

20  old needle that they stick in there.  I'm honestly scared,

21  Your Honor.

22        THE COURT:  Well, all right.

23        MR. CARTER:  That's it.

24        THE COURT:  All right.  So, in order to obtain a

25  temporary restraining order or preliminary injunction, it's

MSJ Exs. 0083

1  a pretty high burden.  You have to meet the initial showing

2  of that you have a probability of success on the merits and

3  you also need to show that there'll be irreparable harm,

4  those are two of the factors.

5      Here, I don't believe that you can prove

6  probability of success on the merits of your claim, which

7  is deliberate indifference to serious medical needs.

8  You've certainly have shown that there's some delay and

9  perhaps, you know, more delay than we would always -- that

10  you didn't -- we would all like to see for medical care or

11  dental care of our inmates.  But it doesn't, to me, from

12  the evidence I've seen, doesn't rise to a level of being

13  deliberate indifference to serious medical needs.  All

14  right.  There's just a lot of people that need to be

15  treated and limited resources.  And they see you when they

16  can and I don't believe that there's any bad faith, or

17  recklessness, or indifference by the doctor here and I'm

18  sure when you go back to see him he's not going to

19  retaliate against you.  He's going to do -- because he's a

20  professional and he's going to exercise his professional

21  duty of care in treating you.  I have no doubt about that.

22      So, I'm denying your Motion.  You haven't met the

23  burden.  And I suggest that you submit a new kite for

24  further treatment and go in there and he's going to get you

25  still treated -- and reviewed and treated as soon as

MSJ Exs. 0084

1   possible.  As for your underlying lawsuit, I'm going to

2   look at the paperwork because there's a pending Motion to

3   Dismiss.  I'm going to look at that and I'm going to take

4   it under advisement and decide what to do in about a week

5   or so.  Now, if you have any further problems, bring

6   another -- you know how to do the process.

7           Let me tell you, you're quite competent in

8   representing yourself, and presenting yourself, and the

9   paperwork that you filed.  Everything that you've done,

10  I'll tell you, you've done a good job and you would have

11  made a good lawyer.  All right?  So, but anyway, I have to

12  respectfully deny your Motion.  But if, you know, refile if

13  something doesn't happen.  Okay?

14          MR. CARTER:  But, Your Honor, I'm in pain now.

15          THE COURT:  Well, and -- that's why when you get

16  back, file a new kite, indicate that you're in serious

17  pain.  They'll --

18          MR. CARTER:  And he says it takes 60 days.

19          THE COURT:  I know.  He knows about your

20  situation.  I'm sure he'll try to prioritize you in with

21  everybody else.  All right.  I can't -- I -- look, I have

22  to let NDOC and their staff do their job in administering

23  medical care to the great number of people that they have.

24  All right?  It seems like there's not a situation here

25  where you've proven deliberate indifference.  So, on that,

31

1   your Motion will be -- I'm sorry.  Your Complaint will be

2   reviewed and I'll decide that in due course.  All right?

3           MR. CARTER:  Yes, sir.  Can I say one more thing?

4           THE COURT:  So, thank you.  No.  I got -- well,

5   one last word.

6           MR. CARTER:  As far as the deliberate

7   indifference, sir, one, they know about it --

8           THE COURT:  Yeah.

9           MR. CARTER:   -- two, they said it needs to be

10  treated and, three, they're not treating it.  How much more

11  deliberate indifference do you have to give?

12          THE COURT:  Well, because I -- because the

13  evidence that was before me, I found the doctor's testimony

14  to be credible that when you went to see him in February

15  that you didn't mention the two.  And I found him credible

16  on that -- in that regard.  And, so, he -- if you had told

17  him, I need this tooth fixed, I think he would have fixed

18  it for you.  So, do another kite, if it doesn't get fixed,

19  come see me again.  All right?  Then I'll know there's a

20  problem.  All right?

21          MR. CARTER:  They're not going to fix it.

22          THE COURT:  They're going to fix it if you've got

23  a problem.  All right.  Thank you.

24          MS. HAAR:  Thank you, Your Honor.

25          THE COURT:  Thank you.

32

MSJ Exs. 0086

1          MR. POTTER:  Thank you, Your Honor.  I'll draft

2  the Order.

3

4                         *  *  *  *  *

5             PROCEEDING CONCLUDED AT 12:21 P.M.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

MSJ Exs. 0087

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the audio-visual recording of the proceedings in the above-entitled matter.

**AFFIRMATION**

I affirm that this transcript does not contain the social security or tax identification number of any person or entity.

KRISTEN LUNKWITZ
INDEPENDENT TRANSCRIBER

34

MSJ Exs. 0088

EXHIBIT #9

EXHIBIT #9

Electronically Filed
5/22/2017 2:43 PM
Steven D. Grierson
CLERK OF THE COURT

1  | **MDSM**
  | ADAM PAUL LAXALT
2  |   Nevada Attorney General
  | BARRACK T POTTER (Bar No. 14105)
3  |   Deputy Attorney General
  | State of Nevada
4  | Office of the Attorney General
  | 555 E. Washington Avenue, Ste. 3900
5  | Las Vegas, NV 89101
  | Telephone:  (702) 486-3125
6  | Facsimile: (702) 486-3773
  | E-Mail: bpotter@ag.nv.gov
7  |
8  | *Attorneys for Defendants State of Nevada,*
  | *James Dzurenda, Scherrie Bean,*
  | *and Ronrico Mangapit*
9  |

10 | ### DISTRICT COURT

11 | ### CLARK COUNTY, NEVADA

12 | SHANNON CARTER,                    CASE NO.   A-16-747779-C

13 |         Plaintiff,                 DEPT. NO. II

14 |  v.

15 | JOHN DOE HDSP DENTIST, et al.,

16 |         Defendants.

17 |

18 | ### DEFENDANTS' MOTION TO DISMISS

19 | Defendants State of Nevada, ex rel. Nevada Department of Corrections, James

20 | Dzurenda, Scherrie Bean, and Ronrico Mangapit, by and through counsel, Adam Paul

21 | Laxalt, Nevada Attorney General, and Barrack T Potter, Deputy Attorney General,

22 | hereby move to dismiss Plaintiff Shannon Carter's Complaint.  This motion is made

23 | pursuant to Nevada Rule of Civil Procedure ("NRCP") 12(b) and based on the following

24 | memorandum of points and authorities, the pleadings on file, and any further evidence

25 | the Court deems appropriate to consider.

26 | . . .

27 | . . .

28 | . . .

1

## NOTICE OF HEARING ON MOTION

2  TO:  ALL INTERESTED PARTIES:

3   **YOU WILL PLEASE TAKE NOTICE** that the undersigned will bring the

4 foregoing **DEFENDANTS' MOTION TO DISMISS** on for hearing before Department II

5 of the Eighth Judicial District Court, Clark County, Nevada, Regional Justice Center, 200

6 Lewis Avenue, Las Vegas, Nevada 89155, on the ____28____ day of ____June____, 2017, at

7 the hour of ____9:00am____.m., or as soon thereafter as counsel may be heard.

8   DATED this 22nd day of May, 2017.

9          ADAM PAUL LAXALT

10         Attorney General

11         By:___*/s/ Barrack T Potter*___

            BARRACK T POTTER (Bar No. 14105)

12         Deputy Attorney General

            *Attorneys for Defendants State of Nevada,*

13         *James Dzurenda, Scherrie Bean,*

            *and Ronrico Mangapit*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   I.     **BACKGROUND**

3         Plaintiff, Shannon Carter (Plaintiff), is an inmate lawfully incarcerated in the

4 Nevada Department of Corrections (NDOC) and is currently housed at High Desert State

5 Prison (HDSP). On December 8, 2016, Plaintiff filed a Complaint pursuant to 42 U.S.C. §

6 1983 against John Doe, HDSP Dentist; S. Bruns, Dentist Assistant; Jane Doe, Dental

7 Assistant; the State of Nevada; and James Dzurenda, Director of NDOC. *See* Compl. On

8 February 22, 2017, Plaintiff filed an Amended Complaint against Defendants the State of

9 Nevada ex rel. NDOC; James Dzurenda, Director of NDOC; Scherrie Bean, a dental

10 assistant at HDSP; and Ronrico Mangapit, a dentist at HDSP (collectively referred to as

11 "Defendants"). Defendants Bean and Mangapit were served with the Summons and

12 Amended Complaint on April 7, 2017 through the NDOC. Defendant Dzurenda was

13 served with the Summons and Amended Complaint on April 27, 2017 through the NDOC.

14         Plaintiff asserts one cause of action in his Amended Complaint against the

15 Defendants for deliberate indifference to serious medical needs under the Eighth

16 Amendment. Am. Compl. at 4. Plaintiff alleges that Defendants Bean and Mangapit

17 were deliberately indifferent to his serious medical needs for "delaying treatment to (3)

18 effect [sic] teeth[.] [F]or [one] over 117 days[,] the [second] over 150 and the thiered [sic]

19 tooth has still to this day has [sic] not been addressed." *Id.* at 2. Plaintiff claims that

20 Defendant Dzurenda was deliberate and indifferent by failing to address the inadequate

21 dental procedure at HDSP, which he was aware of or should have been aware of. *Id.*

22         Plaintiff claims that "on 2/20/16 [he] informed dental at High Desert State Prison,

23 via medical kite, that [he] was having pain in some of [his] back teeth and would like to

24 be seen." *Id.* "On 2/29/16, [he] received a copy of [his] kite stating apt. scheduled by

25 defendant S. Bean." *Id.* Plaintiff further alleges that he was called to dental for an

26 examination 61 days from informing dental of his desire to be seen. *Id.* At that

27 appointment Plaintiff alleges he was advised he would have to have treatment for his

28 teeth and was placed on a treatment list. *Id.* at 5.

1    In his Amended Complaint, Plaintiff asserts that he attempted to resolve this

2  dispute by submitting grievances to NDOC. *Id.* at 8. Plaintiff specifically references

3  Grievance Number 20063023297. *Id.* Plaintiff alleges in his informal grievance that

4  "HDSP Dental Program and/or Policy is inadequate and deliberate indifference [sic] to my

5  serious medical needs[.]" *See* State of Nevada, Department of Corrections, Inmate

6  Grievance History, attached hereto as **Exhibit A**. The official response to that grievance

7  was that "the last time you saw dental was 4/29/16. It was noted you need fillings.

8  Because of the modified lockdown on unit 10 the list of I/M from unit 10 has grown. You

9  are on the dental list and will be seen at the next available appointment." *Id.*

10    Plaintiff then filed a first level grievance disagreeing with the official response and

11  stating "[t]here is no reason it should have taken 117 days to be treated for a condition

12  that was determined by a dentist needed treatment." *Id.* The official response to

13  Plaintiff's first level grievance was that "[b]ased on your medical records, on 6/16/16, you

14  were evaluated, examined and given the necessary dental treatment (fillings) by the

15  dentist. Several x-rays were performed and you were advised if any other symptoms

16  develop, submit a kite and you will be scheduled accordingly." *Id.*

17    Plaintiff filed a second level grievance and stated:

18        It take [sic] 147 days to be treated for my serious medical needs.
        Upon treatment the dental doctor determined I had 4 more
19        cavities yet refused to treat them. He told me when I can no
        longer take the pain put in a kite. I informed him I was in pain
20        and if I put in a kite they will charge me again when I [am]
        already here. I was informed that I would be put on a dental
21        plan. [T]his has not happened. Please help.

22  *Id.* Dr. Aranas stated in the official response that:

23        Based on your medical records, on 4/4/16, you were scheduled to
        see the dentist but unfortunately you were not seen because your
24        unit was on lock down on that day for safety and security
        reasons. On 4/29/16, you had a dental consult. You were told that
25        you need fillings on teeth #18, 19 and 31 and pain medications
        were prescribed. On 6/6/16, filling was done based on the finding
26        that this tooth had the largest cavity. X-rays were taken. Just
        like any other Department, Inmate services and appointments
27        will be provided using the priority system established by the
        institution dentist per AR 631. There other inmates waiting for
28        their turn to be seen. A dentist may extract several teeth, or fill

Page 4 of 9

1    multiple teeth, or extract one tooth or fill one tooth depending on
     the case and the situation and time needed and available. You
2    are advised to submit a kite about your dental complaint and
     service will be rendered appropriately and accordingly.
3

4    *Id.*

5    **II.    LEGAL STANDARD**

6        **A.    Failure to State a Claim**

7        A pleading is subject to certain rules; primary among them is that a plaintiff's

8    complaint must adhere to Nev. R. Civ. P. 8(a), which provides:

9        A pleading which sets forth a claim for relief [. . .] shall contain (1)
         a short and plain statement of the claim showing that the pleader
10       is entitled to relief; and (2) a demand for judgment for the relief
         the pleader seeks.  Relief in the alternative or of several different
11       types may be demanded.
12

13   NEV. R. CIV. P. 8(a).  The State of Nevada follows a notice pleading standard as to NEV. R.

14   CIV. P. 8(a) and the sufficiency of the complaint. *See Crucil v. Carson City*, 95 Nev. 583, 585,

15   600 P.2d 216, 217 (1979) ("[T]he pleading of [a] conclusion, either of law or fact, is sufficient

16   so long as the pleading gives fair notice of the nature and basis of the claim.").

17   Nevertheless, even under the notice pleading standard, "[a] complaint must set forth

18   sufficient facts to establish all necessary elements of a claim for relief [. . .] so that the

19   adverse party has adequate notice of the nature of the claim and relief sought." *Hay v. Hay*,

20   100 Nev. 196, 198, 678 P.2d 672, 674 (1984) (internal citations omitted).

21       NEV. R. CIV. P. 12(b)(5) allows this Court to dismiss a complaint for "failure to state

22   a claim upon which relief can be granted."  When reviewing a motion to dismiss under

23   NEV. R. CIV. P. 12(b)(5), this Court "must construe the pleadings liberally and accept all

24   factual allegations in the complaint as true." *Blackjack Bonding v. City of Las Vegas*

25   *Mun. Ct.*, 116 Nev. 1213, 1217, 14 P.3d 1275, 1278 (2000).  In doing so, "this [C]ourt must

26   draw every fair inference in favor of the non-moving party." *Id.*  "A complaint will not be

27   dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff

28   could prove no set of facts which, if accepted by the trier of fact, would entitle him or her

1  to relief.'" *Id.* (quoting *Simpson v. Mars Inc.*, 113 Nev. 188, 190, 929 P.2d 966, 967

2  (1997)). Conclusory allegations are "not entitled to be assumed true," and a "formulaic

3  recitation of the elements" of a claim is insufficient to state a claim. *Ashcroft v. Iqbal*, 556

4  U.S. 662, 681 (2009) (internal quotation marks omitted). Thus, a complaint that is

5  "vague and conclusory" fails to state a claim. *Madera v. State Indus. Ins. Sys.*, 114 Nev.

6  253, 259, 956 P.2d 117, 121 (1998).

7      "As a general rule, the court may not consider matters outside the pleading being

8  attacked." *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 847, 858 P.2d 1258, 1261

9  (1993). "However, the court may take into account matters of public record, orders, items

10  present in the record of the case, and any exhibits attached to the complaint when ruling

11  on a motion to dismiss for failure to state a claim upon which relief can be granted." *Id.*

12  Additionally, "a document is not outside the complaint if the complaint specifically refers

13  to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d

14  449, 454 (9th Cir.1994) *overruled on other grounds by Galbraith v. Cty. of Santa Clara*,

15  307 F.3d 1119, 1125–26 (9th Cir.2002).

16      **B.    Service of Process**

17      NEV. R. CIV. P. 12(b)(3) and 12(b)(4) provide for dismissal of an action due to defects

18  in service of process. The Nevada Supreme Court has held that "notice is not a substitute

19  for service of process. Personal service or a legally provided substitute must still occur in

20  order to obtain jurisdiction over a party." *C.H.A. Venture v. G.C. Wallace Consulting*

21  *Eng'rs, Inc.*, 106 Nev. 381 384, 794 P.2d 707, 709 (1990).

22  
23  
24  
25  
26  
27  
28  

> If a service of the summons and complaint is not made upon a
> defendant within 120 days after the filing of the complaint, the
> action shall be dismissed as to that defendant without prejudice
> upon the court's own initiative with notice to such party or upon
> motion, unless the party on whose behalf such service was
> required files a motion to enlarge the time for service and shows
> good cause why such service was not made within that period. If
> the party on whose behalf such service was required fails to file
> a motion to enlarge the time for service before the 120-day
> service period expires, the court shall take that failure into
> consideration in determining good cause for an extension of
> time. Upon a showing of good cause, the court shall extend the

1    time for service and set a reasonable date by which service
     should be made.
2

3    NRCP 4(i). "To avoid dismissal of a case, NRCP 4(i) requires a party who fails to

4    effectuate service of process within 120 days from the filing of the complaint to

5    demonstrate good cause for the delay of service." *Saavedra-Sandoval v. Wal-Mart Stores,*

6    126 Nev. 592, 594, 245 P.3d 1198, 1199 (2010). "Dismissal is mandatory unless there is a

7    legitimate excuse for failing to serve within the 120 days." *Scrimer v. Eighth Jud. Dist.*

8    *Ct. ex rel. Cty. of Clark,* 116 Nev. 507, 512–13, 998 P.2d 1190, 1193 (2000).

9    **III.    ARGUMENT**

10        **A.    Plaintiff's Complaint Fails to Meet the Elements for a Claim for
               Deliberate Indifference to Serious Medical Needs and Must be**
11             **Dismissed.**

12       "Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison

13   medical treatment, an inmate must show deliberate indifference to serious medical

14   needs." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

15   The test for deliberate indifference consists of two parts. *Id.* "First, the plaintiff must

16   show a serious medical need by demonstrating that failure to treat a prisoner's condition

17   could result in further significant injury or the unnecessary and wanton infliction of

18   pain." *Id.* "Second, the plaintiff must show the defendant's response to the need was

19   deliberately indifferent." *Id.* The second prong is "satisfied by showing (a) a **purposeful**

20   **act or failure to respond to a prisoner's pain or possible medical need** and (b)

21   **harm caused by the indifference.**" *Id.* (emphasis added).

22       "A difference of opinion between a prisoner-patient and prison medical authorities

23   regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State*

24   *Welfare Div.,* 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of

25   opinion amounted to deliberate indifference, the prisoner "must show that the course of

26   treatment the doctors chose was medically unacceptable under the circumstances" and

27   "that they chose this course in conscious disregard of an excessive risk to [the prisoner's]

28   health." *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996). When a prisoner alleges

1   that delay of medical treatment evinces deliberate indifference, the prisoner must show

2   that the delay led to further injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766

3   F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is

4   insufficient to state a claim of deliberate medical indifference").

5         Here, the crux of Plaintiff's case is that "[t]here is no reason it should have taken

6   117 days to be treated for a condition that was determined by a dentist needed

7   treatment."   *See* Exhibit A.   However, "mere delay of surgery, without more, is

8   insufficient to state a claim of deliberate medical indifference." *See Shapley*, 766 F.2d at

9   407. Plaintiff has failed to allege "a purposeful act or failure to respond to a prisoner's

10  pain or possible medical need" and "harm caused by the indifference." *Jett*, 439 F.3d at

11  1096. Conversely, Plaintiff admits in his Amended Complaint that he was seen multiple

12  times and treated by the dental office. *See* Am. Compl. *generally*; *see also* Exhibit A.

13  Therefore, Plaintiff's Complaint fails to state a claim for deliberate indifference to serious

14  medical needs and must be dismissed.

15      **B.**   **In the Alternative, Plaintiff's Amended Complaint Must be**
16             **Dismissed Against Dzurenda Because Plaintiff Failed to Serve**
              **Within the 120 Day Timeframe and Cannot Show Good Cause for His**
17             **Failure**

18        Plaintiff's Complaint must be dismissed against Dzurenda for failure to serve

19  within 120 days. "To avoid dismissal of a case, NRCP 4(i) requires a party who fails to

20  effectuate service of process within 120 days from the filing of the complaint to

21  demonstrate good cause for the delay of service." *Saavedra-Sandoval v. Wal-Mart Stores*,

22  126 Nev. 592, 594, 245 P.3d 1198, 1199 (2010). "Dismissal is mandatory unless there is a

23  legitimate excuse for failing to serve within the 120 days." *Scrimer v. Eighth Jud. Dist.*

24  *Ct. ex rel. Cty. of Clark*, 116 Nev. 507, 512–13, 998 P.2d 1190, 1193 (2000).

25        On December 8, 2016, Plaintiff filed his Complaint and named Dzurenda as a

26  defendant. Plaintiff did not serve Dzurenda until April 27, 2017, which is 140 days from

27  the time the Complaint was filed. Plaintiff will not be able to show good cause as to why

28  service was not completed within 120 days. Plaintiff will not be able to show good cause

1    as to why a motion to extend time to serve was not filed with this Court.   Therefore,

2    Plaintiff's Complaint must be dismissed against Dzurenda.

3    **IV.    CONCLUSION**

4        Defendant respectfully requests this Court dismiss Plaintiff's Complaint for failure

5    to state a claim under NEV. R. CIV. P. 12(b)(5) because Plaintiff's Complaint fails to meet

6    the elements for a claim for deliberate indifference to serious medical needs.   In the

7    alternative, this Court should dismiss Plaintiff's Complaint against Dzurenda for failure

8    to serve within 120 days.

9        DATED this 22nd day of May, 2017.

10                  ADAM PAUL LAXALT
                       Attorney General

11

12                  By:    */s/ Barrack T Potter*
                       BARRACK T POTTER (Bar No. 14105)

13                        Deputy Attorney General
                       *Attorneys for Defendants State of Nevada,*

14                        *James Dzurenda, Scherrie Bean, and Ronrico*
                       *Mangapit*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT #10

EXHIBIT #10

Possible legal documents
Please Return for my
Records
Case Nu# A-16-747779-C

**INMATE REQUEST FORM**

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|---|
| Shannon Carter | 70773 | 8 C/4 | 7-16-17 |

4.) __REQUEST FORM TO:__ (CHECK BOX)

___ CASEWORKER     ___ MEDICAL     ___ MENTAL HEALTH     ___ CANTEEN

___ EDUCATION     ___ VISITING     ___ LAW LIBRARY     ___ DENTAL

___ LAUNDRY     ___ PROPERTY ROOM     ___ SHIFT COMMAND

X OTHER  Warden

5.) __NAME OF INDIVIDUAL TO CONTACT:__ B. William   Warden

6.) __REQUEST:__ ( PRINT BELOW) I would like to Personally inform you I am being denied Dental care here at high Desert state Prison. On 7-13-17 I went to court your head dentists/there I informed the court and the dentist I was in Pain and needed to be treated. 4-29-16 (HDSP) dental determined I have (3) teeth that warranted treatment #18 #19 #31, #18 and #19 were treated #31 was not I have informed dental ☐ Via grievances, civil complaint, Dental sick call, and a court hearing. That I was in pain and need to be treated I am in pain and have been for over a year cant sleep, eat Pain (9) out of (10) Please help.

| 7.) INMATE SIGNATURE Shannon Carter | DOC # 70773 |
|---|---|
| 8.) RECEIVING STAFF SIGNATURE | DATE |

*************************************************************

9.) __RESPONSE TO INMATE__

HIGH DESERT STATE PRISON
1 6 2017
INIT & CID

I am in receipt of your kite.... Medical will be in contact to schedule you an appointment

| 10.) RESPONDING STAFF SIGNATURE B. Will | DATE 7-17-17 |
|---|---|

DOC – 3012 (REV. 7/01)

EXHIBIT # 11

## Minutes of Proceedings
2:17-cv-01628-RFB-GWF Carter v. Bean et al

### United States District Court

### District of Nevada

## Notice of Electronic Filing

The following transaction was entered on 10/18/2018 at 8:18 PM PDT and filed on 10/10/2018

**Case Name:**    Carter v. Bean et al
**Case Number:**    2:17-cv-01628-RFB-GWF
**Filer:**
**Document Number:**33(No document attached)

**Docket Text:**
**MINUTES OF PROCEEDINGS - Motion Hearing held on 10/10/2018 before the Honorable Richard F. Boulware, II. Crtrm Administrator: *Blanca Lenzi*; Pla Counsel: *Shannon Carter, Pro Se*; Def Counsel: *Matthew Feeley, Deputy A.G., Frank Toddre, Deputy A.G*; Court Reporter: *Patty Ganci*; Time of Hearing: *12:03 PM - 12:26 PM*; Courtroom: *7C*.**

***Pro se* Plaintiff Shannon Carter is present in custody. The Court makes preliminary statements and hears representations of plaintiff and defense counsel regarding the [11] Motion for Temporary Restraining Order and [12] Motion for Preliminary Injunction.**

**For the reasons stated on the record at the hearing,**

**IT IS ORDERED that Plaintiff Shannon Carter's [11] Motion for Temporary Restraining Order is DENIED without prejudice pending the resolution presented by the Defendants. Defense counsel shall make the arrangements to have plaintiff evaluated by a dental professional to address the dental issues that plaintiff has to be addressed within a two week time frame. A notice of compliance shall be filed under seal.**

**IT IS FURTHER ORDERED that Plaintiff Shannon Carter's [12] Motion for Preliminary Injunction is DENIED without prejudice.**

Shannon Carter #70713

P.O. Box 208

Indian Springs, NV. 89070

FILED
ENTERED
COUNSEL/PARTIES OF RECORD
NOV 05 2019
CLERK US DISTRICT COURT
DISTRICT OF NEVADA

UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

Shannon Carter,
            Plaintiff,

Vs.

Bean et al.,
            Defendants,

Case No. 2:17-CV-01628-RFB-EJY

BRIEF IN SUPPORT OF PLAINTIFFS

MOTION FOR PARTIAL SUMMARY

JUDGMENT

## Statement of the Case.

This is a 1983 action filed by a prisoner at High desert state Prison seeking damages, and a declaratory Judgment relief based on Violations of plaintiffs Substantive due process rights, Retaliation and Deliberate and Indifference to serious medical needs. In this motion the plaintiff seeks Summary Judgment on his 14th amendment Substantive due process and his 8th amendment Deliberate and Indifference to serious medical needs claims.

## Statement of facts.

As set forth in the accompanying declaration of the plaintiff, Shannon Carter, Plaintiff first informed the defendants of my need of dental treatment on 2-20-16 as seen in exhibit #2 of declaration. On 4-29-16 the defendants determined Plaintiff had a serious medical need I.E. fillings on tooths #18 #19 and #31 as seen in exhibit #3 of declaration. Dispite multiple Kites, Grievances, 1983 Civil suits and (TRO) hearing at Plaintiff directly informing the defendants of dentals delays, plaintiffs pain and plaintiffs need of treatment as seen in exhibits #2 #3 #5 #7 #8 #9 of Plaintiff declaration.
     The defendants delayed and or refused to treat plaintiffs serious medical needs determined on 4-29-16 intill forced to do so by this federal court after plaintiff filed a Second (TRO) in federal court in some time in August of 2018 two years and (4) months after determining Plaintiff was in need of medical treatment as seen in exhibit #11 of Plaintiffs declaration Resulting in Subjecting plaintiff to unnecessary wanton infliction of pain and ultimately parmanount loss of two teeth as seen in report sent to this court by defendants after (TRO) hearing.

## ARGUMENT
### POINT 1

THE DEFFENDANTS CONDUCT ONCE THEY DETERMINED PLAINTIFF HAD A SERIOUS MEDICAL NEED OF DELIBERATELY AND INTENTIONALLY DELAYING AND OR REFUSING TO PROVIDE MEDICAL TREATMENT FOR TWO YEARS AND FOUR MONTHS RESULTING IN PARMANOUNT LOSS OF TWO TEETH VIOLATED PLAINTIFFS SUBSTANTIVE DUE PROCESS AND WAS DELIBERATE AND INDIFFERENT TO PLAINTIFFS SERIOUS MEDICAL NEEDS.

A prisoner may assert a fourteenth amendment substantive due process claim if the prisoner can show that the deliberate indifference of prison officials to medical needs of the prisoner "shocks the conscience". Lemire V. Cal Dep't corrs. & Rehab., 726 F.3d 1062, 1075 (9th cir. 2013) "A prison's officials deliberately indifferent conduct will generally "shock the conscience" so long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." Id. At 1075. Holding six week delay in sending prisoner to a dentist, resulting in infection and loss of teeth raised an eight amendment claim. Hartsfiled V. Colburn, 371 F.3d 454, 457 (8th cir. 2004) A number of cases have held that sick call procedures that did not permit adequate assessment of prisoner's complaints are constitutionally inadequate. In the instant case plaintiff was delayed and or refused dental treatment for at less two years and four months in the face of multiple complaints and pleadings to be treated. Holding three-month delay in treating a toothache in the face of the prisoners repeated complaints supported deliberate indifference claim; complaints supported an inference of actual knowledge by the dentist. Moore V. Jackson, 123 F.3d 1082, 1087 N.3 (8th cir. 1997)

## A. Plaintiff had a Serious Medical need.

Under the constitution prison officials need provide care only for "Serious medical needs." Estelle V. Gamble, 429 U.S. 97 S. Ct. 285, 1976 Many Courts have held that a serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a Doctors attention. Brown V. Johnson 387, F.3d 1344 1351 (11th cir 2004) In the instant case the defendants physician mandated treatment on 4.29.16 I.E fillings on teeth #18 #19 and #31

## B. The defendants had Knowledge of Plaintiffs Serious Medical needs.

As the Supreme court put it, Whether a prison official had the requisite knowledge of Substantive risk is a question of fact Subject to demonstration in the usual ways, including inference from Circumstantial evidence, and a fact finder may conclude that a prison officials knew of a Substantial risk from the very fact that the risk was obvious. Famer, 511 U.S. at 842 See also Vance V. Peters, 97 F.3d 987, 992 (7th cir. 1996) Spruce V. Sargent, 149 F.3d 783, 785-86 (8th cir. 1998)

large number of complaints and grievances put supervisors on notice that guard posed risk to african-American inmates. Curry V. Scott, 249 F.3d 493, 508 (6th cir. 2001) In the instant case the record reflexs on its face that the defendants had complete knowledge of dentals delays plaintiffs pain and need of dental treatment via, multiple kites, grievance, summons and complaints and (TRO) hearings.

C. The defendants delayed and or refused to treat Plaintiffs Serious medical needs.

As a general rule a delay violates the constitution if it is (1) medically unjustified and (2) clearly likely to make the inmate's medical problem worse or result in a lifelong handicap or permanent loss. Goebert V. Lee County, 510 F.3d 1312, 1329 (11th cir. 2007) In the instant case the defendants determined Plaintiff had a serious medical need which warranted treatment by a licenced physician on 4.29.16 Plaintiffs medical treatment for theses issues was not fully addressed intill August of 2018. over two years later

D. Failure to treat plaintiff timely resulted in further Significant injury.

On 4.29.16 the defendants perscribed fillings on teeth #18 #19 and #31 plaintiff was not trected intill August of 2018 two years and four months later Subjecting plaintiff to "unnecessary wanton infliction of pain." I.E. Swelling Jaw, Bleeding gums, chipping teeth, High Blood pressure, sorverly painful headaches, unable to eat and sleep properly and two attempts of suicides due to the extreme pain. Ultimately tooth #18 along with one more tooth had to be extracted due solely to the delay of treatment by the defendants.

## POINT II
DEFENDANTS DZURENDA, WILLIAMS, BUENCAMINO, STEWART, HOWELL, NASH AND ARANAS
ARE LIABLE FOR THE SUBSTANTIVE DUE PROCESS VIOLATIONS AND THE DELIBERATE
INDIFFERENTS TO PLAINTIFFS SERIOUS MEDICAL NEEDS

Although theses defendants did not personally deny plaintiff medical treatment they became responsible for them when they failed to correct them in the course of there adminastative duties and supervisory responsibilites and affirmed dentals delay and or refusal of treatment to plaintiffs Serious medical needs. A Supervisor who learns of a constitutional Violation through a report or appeal may be held liable for failing to correct it; William V. Smith, 781 F.2d 319, 323-24 (2d cir. 1986) Holding that a Supervisor may be held personally responsible for the deprivation of constitutional rights if, inter alia the Supervisor (A) is aware of the deprivation and fails to remedy it; or (B) created or allowed to continue, a policy in which unconstitutional practices occurred. Lewis V. Smith, 855 F.2d 736, 738, (11th cir 1988) It cannot be argued that the defendants Dzurenda, Williams, Buencomino, Stewart, Howell, Nash and Aranas did not learn of the deliberate and indifference.

to plaintiffs serious medical needs by dental in this case. plaintiff identified his pain and need of treatment due to dentals unwarranted delays of medical treatment through multiple kites, grievances, summons and complaints, and (TRO) hearings. Nor can it be argued that this is merely a case of "knowledge and acquiescence" in a subordinates Violation, which may not itself Violate the constitution. see Ashcroft V. Iqbal, U.S. 129 S. Ct. 1937, 1949 (2009) This is a case where the warden, Ass wardens, medical grievance responders, and medical director, along with N.D.O.C. director "personally had a job to do, and they did not do it" and there failure to do, there Job was so likely to result in the Violation of the inmates constitutional rights as to establish deliberate indifference on there part Hill V. Marshall, 962 F.2d 1209  1213-14 (6th Cir. 1992) Deliberate indifference by Supervisory officials to inmates constitutional rights is sufficient to establish liability under 42 U.S.C 1983. Jett V. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) Prison administrators "are liable for deliberate indifference when they knowingly fail to respond to an inmates request for help". Thompson V. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001)

## CONCLUSION

For the foregoing reasons the court should grant partial Summary Judgment on liability to the plaintiff on his Substantive Due process and deliberate and indifferents to serious medical needs claims. The amount of damages due to the plaintiff must be determined at trial. Petterson V. Coughlin, 905 F.2d 564 570

Dated this 30th day of October 2019

Respectfuly Submitted,

Shannon Carter

Shannan Carter #70773
PO Box 208
Indian Springs NV. 89070

Shannon Carter #70773
P.O. Box 208
Indian Springs N.V. 89070



## UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

Shannon Carter,
              Plaintiff

Vs.

Bean et al.,
              Defendants

Case No. 2:17-CV-01628-RFB-EJY

STATMENTS OF UNDISPUTED
              FACTS

Pursuant to local Rule of this Courts civil Rules, the plaintiff Submits the following list of undisputed facts that entitle him to partial Summary Judgment on his claims of denial of Substantive due process and deliberate and indifferents to Serious medical needs.

1.) Plaintiff first informed defendants of need of dental treatment as early as 2-20-16 Via Medical Kite.

2.) Defendants determined Plaintiff had a Serious medical need that warranted medical treatment by a licenced Physician on 4-29-16 I.E. fillings on teeth 18# 19# and 31#

3.) Defendants Bitar, Bean, Williams, Nash, Howell, Stewart, Buencamino, Aranas and Dzurenda had each been personally informed by Plaintiff of 1.) dentals delays in treating plaintiff. 2.) That plaintiff was in pain and 3.) Plaintiff had a Serious medical need via Multiple Kites, grievances, Service of Summons and Complaints of 1983 civil suits and TRO hearings.

4.) On 4-29-16 the defendants recommended treatment fillings on tooth #18 #19 and #31 in August of 2018 tooth #19 was never filled and ultimately had to be extracted along with one more tooth.

Dated this 30th day of October, 2019

Shannon Carter
Shannon Carter #70773
P.O. Box 208
Indian Springs, N.V. 89070



P.O. Box 208
Indian Springs, N.V. 89070

er #70773

FILED
ENTERED
CONCEALED/FAIL TO RECOVER

NOV - 5 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                              DEPUTY

2094662
3765

Clerk of the Court, U.S. District Court
333 Las Vegas BLVD. SO-RM 1334
Las Vegas, N.V. 8

USPS PRIORITY

COMMERCIAL BASE

P

SHIP
TO:

VICTOR JOHNSON
LAS VEGAS STATE MAIL SERVICES
5555 E. WASHINGTON AVE #1200
LAS VEGAS NV 89101

US DISTRICT COURT
333 LAS VEGAS BLVD S
LAS VEGAS NV 89101-7065

Hasler
11/04/2019
US POSTAGE $0

USPS TRACKING #