AARON D. FORD
  Attorney General
Wade J. VanSickle (Bar No. 13604)
  Deputy Attorney General
State of Nevada
Office of the Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
(702) 486-3216 (phone)
(702) 486-3773 (fax)
Email: wvansickle@ag.nv.gov
*Attorneys for Defendants Scherrie Bean, Paul Bitar,*
*Alberto Buencamino, James Dzurenda, Jerry Howell,*
*Jennifer Nash, and Brian Williams*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHANNON CARTER, | Case No. 2:17-cv-01628-RFB-EJY |
| Plaintiff, | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| S. BEAN, BITAR, and J. NASH, *et al*., | |
| Defendants. | |

Defendants, Scherrie Bean, Paul Bitar, Alberto Buencamino, James Dzurenda, Jerry Howell, Jennifer Nash, and Brian Williams, by and through counsel, Aaron D. Ford, Attorney General for the State of Nevada, and Wade J. VanSickle, Deputy Attorney General, hereby submit their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure (FED. R. CIV. P.) 56.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants are entitled to summary judgment on all claims brought by Plaintiff, Shannon Carter (Carter), because the undisputed facts demonstrate the claims against Sherrie Bean (Bean), Paul Bitar, M.D. (Dr. Bitar), High Desert State Prison (HDSP) Director of Nursing Services (DONS) Alberto Buencamino (Buencamino), former Nevada Department of Corrections (NDOC) Director, James Dzurenda (Dzurenda), former HDSP Associate Warden Jerry Howell (Howell), former HDSP Associate Warden Jennifer Nash (Nash), and former HDSP Warden, Brian Williams (Williams) fail as a matter of law.

This is an inmate civil rights action pursuant to 42 U.S.C. §1983. ECF No. 14. The Court's screening order permitted Carter to proceed on the following claims:

- Eighth Amendment deliberate indifference and First Amendment retaliation claims against Bean and Dr. Bitar based upon allegations that Carter presented to the HDSP dental clinic on February 1, 2017, requesting treatment for an infected tooth, but he was refused treatment because he had filed a separate lawsuit against Bean. ECF No. 44 at 4:1-22, 6:24-28.

- Eighth Amendment deliberate indifference claim against Nash based upon the allegations she "improperly rejected [Plaintiff's] grievance as untimely and failed to inform Dental of the need to provide Plaintiff with medical care." ECF No. 44 at 4: 23-28, 6:28, 7:1-5;

- Eighth Amendment deliberate indifference claim against former NDOC Director Dzurenda based upon allegations that he was served a summons and complaint in relation to a state court action on April 21, 2017, that asserted Plaintiff was not receiving dental treatment, but Dzurenda did not act. *Id*. at 5: 14-15, 7:24-28;

- An Eighth Amendment deliberate indifference claim against Williams, the former HDSP warden, is based upon allegations that on July 16, 2017, Plaintiff informed Williams of Carter's failure to receive dental treatment and again informed Williams a few weeks later while on the yard to which Williams responded "you must have really pissed them off" and walked away. *Id*. at 5:2-6, 7:24-28.

- An Eighth Amendment deliberate indifference claim against Buencamino and Howell based upon allegations that they knew, by responding to a grievance submitted by Carter, that Carter needed dental care and failed to act.[1] *Id*. at 7:1-4.

- A First Amendment retaliation claim against Bean and Dr. Bitar based upon allegations they knew Carter had a serious dental condition that was causing him pain, but refused to treat him because he sued Bean in a separate state court lawsuit. *Id*. at 11:1-16.

**A.  Carter's Constitutional Claims Fail as a Matter of Law**

Carter's claims against Buencamino and Howell, as grievance responders, fail as a matter of law because they did not personally participate in the alleged constitutional violation or have knowledge that Plaintiff was allegedly denied dental care on February 1, 2017. Carter asserts Buencamino and Howell were deliberately indifferent to his need for dental care when Buencamino denied Grievance 2006-30-23297 at the First Level, and Howell approved Buencamino's denial. Grievance 2006-30-23297 was denied on or about August 1, 2016, approximately six months prior to the Plaintiff's medical consultation with Bean and Dr. Bitar. Consequently, even if a response to the grievance could create a potential claim (which it does not), it is impossible for Buencamino and Howell to have personally participated in a constitutional violation that had not yet occurred.

Similarly, Carter's medical indifference claim against Dzurenda rests upon allegations that

---

[1] *See also*, ECF No. 14 at ¶¶ 72, 74.

Dzurenda was placed on notice that Carter was being denied dental treatment when he was previously served a copy and summons of a complaint filed in the Eighth Judicial District Court, Clark County Nevada, Case No. A-16-747779-C (State Court Matter), but he failed to respond. However, public records demonstrate Dzurenda was dismissed from the State Court Matter pursuant to Nevada Rule of Civil Procedure (Nev. R. Civ. P.) 4 after Carter failed to timely serve him. Furthermore, even if Dzurenda had been served in the State Court Matter, Carter's operative pleading did not mention or reference his February 1, 2017, consultation with Bean and Dr. Bitar. Thus, there is no evidence Dzurenda was aware Carter was allegedly denied dental care for a serious condition, but nevertheless, intentionally refused to act.

Likewise, Carter's medical indifference claim against Nash rests upon allegations that she violated his constitutional rights when she improperly denied Grievance 2006-30-46164 at the Informal Level. Carter cannot prevail on this claim because Nash never received, responded to, or signed Grievance 2006-30-46164. Nevertheless, even if she had responded to it, she lacked the authority to grant the relief Plaintiff requested (permanent transfer to a different institution). Since Nash did not receive or respond to the Grievance nor have authority to transfer Carter to a different facility, she cannot be found liable.

Carter also asserts Bean and Dr. Bitar were deliberately indifferent to his dental needs when they refused to treat an infected tooth on February 1, 2017. Carter claims this medical indifference was based on retaliation due to Carter suing Bean in the State Court Matter. Bean and Dr. Bitar dispute they refused to provide treatment. Instead, the undisputed evidence will establish that Carter went to the HDSP clinic to obtain names of HDSP dental staff for purposes of his State Court Matter. Nevertheless, Carter's claims fail because he cannot prove the first element of his medical indifference claim, i.e. he was suffering from a serious dental condition. The objective medical evidence (dental x-rays and multiple clinical examinations) demonstrates Carter had a minor cavity in tooth #18 that is not the type to cause severe pain, sleeplessness, or inability to eat. The evidence further reveals Carter did not suffer from an oral infection or bleeding gums. As such, even if Bean and Dr. Bitar refused to provide Carter dental treatment on February 1, 2017, (which they dispute), Carter cannot demonstrate a question of fact exists as to whether he suffered from a serious dental condition to which these Defendants were deliberately

indifferent.

Additionally, Carter claims deliberate medical indifference against Williams by asserting that Williams received a kite (written request) Carter sent him requesting dental care, but Williams never arranged dental care. The claim fails because Carter did not have a serious medical condition at the time he sent the kite to Williams. Furthermore, Williams, as a warden, did not have authority to render medical treatment to Plaintiff or direct HDSP dental to provide a specific course of treatment. Williams contacted the HDSP dental staff and requested Carter be scheduled an appointment. Consequently, Williams' conduct, as a matter of law, does not constitute deliberate indifference. As such, Williams is entitled to summary judgment.

Moreover, the First Amendment retaliation claim against Bean and Dr. Bitar fails because he cannot establish the State Court Matter was a "motivating" or "substantial" factor in the allegations that Bean and Dr. Bitar refused to treat him. Specifically, Carter alleges Bean was served with a copy of the summons and the complaint related to the State Court Matter on January 31, 2017, and that Bean expressly referenced the State Court Matter during the February 1, 2017, dental visit. Carter further asserts Dr. Bitar refused to treat Carter unless he dismissed the State Court Matter. However, Bean was not personally served in the State Court Matter until after February 1, 2017, and she had no knowledge of the State Court matter at the time Plaintiff presented to the HDSP dental clinic. Furthermore, even if Bean had been served in regards to the State Court Matter, she was not a named as a defendant in the Complaint. Thus, it is impossible for Carter to prove a question of fact exists as to whether Bean and Dr. Bitar retaliated against him as a result of a lawsuit of which Bean had no knowledge and to which she was not a party. Thus, summary judgment is proper.

**B.  Defendants are Entitled to Qualified Immunity**

Defendants are entitled to qualified immunity under both prongs of the doctrine. Carter's claims against the Defendants fail because he cannot establish his First Amendment or Eighth Amendment rights were violated, and therefore, qualified immunity is proper under the first prong.

Notwithstanding, Defendants are also entitled to qualified immunity under the second prong because none of them would have been on notice that their conduct could violate Carter's "clearly established" constitutional rights. Specifically, a reasonable official in the same position as Howell,

Buencamino, Nash, or Dzurenda could not have known, or should have known, they could be found to be deliberately indifferent to Carter's alleged dental condition without having any notice or knowledge of Carter purportedly needed care.

Likewise, it was not clearly established that Williams, Bean, and Dr. Bitar, could have violated Carter's Eighth Amendment rights by failing to schedule treatment or refusing to treat a non-emergency, minor cavity that showed no objective signs of oral infection or impeded his daily activities.

Similarly, it was not clearly established that Bean and Dr. Bitar could violate Plaintiff's First Amendment rights by allegedly refusing to treat Plaintiff's non-emergency cavity in retaliation for a lawsuit of which they were not aware or defendants to. Thus, all Defendants are entitled to qualified immunity.

## II.    UNDISPUTED STATEMENT OF FACTS

### A.  Undisputed Facts Regarding Carter's Prior State Court Matter – A-16-747779-C

Several of Carter's claims are premised upon the State Court Matter which was a separate lawsuit Carter filed prior to the instant litigation that arose from similar transactions and occurrences.

On December 8, 2016, Carter filed the State Court Matter asserting an Eighth Amendment deliberate indifference to a serious medical condition claim against "John Doe (H.D.S.P. Dentist)," "S. Burns (Dentist Ass.)," "Jane Doe (Dentist Ass.)," the State of Nevada, and James Dzurenda. *See generally*, Exhibit A.[2] The State Court Matter generally alleged that in early to mid-2016 the defendants refused to treat his dental conditions resulting in excessive pain, bleeding gums, and lack of sleep. *Id*. On January 31, 2017, a copy of the summons and complaint were served upon Katie Gutierrez, an NDOC administrative assistant, on behalf of Bean. *See* ECF No. 14-1 at 53.

On February 22, 2017, Carter filed a First Amended Complaint (State Court Matter FAC) which asserted an Eighth Amendment deliberate indifference to a serious medical condition against Dzurenda, Bean, Ronrico Mangapit, and "Jane Doe (Dental Ass.)." Exhibit B. The State Court Matter FAC asserted Carter was denied dental treatment in early to mid-2016. *Id*. The State Court Matter FAC does not assert that Bean or Dr. Bitar refused to treat Plaintiff on Feb. 1, 2017. *Id*. Additionally, Plaintiff asserted he had attempted to exhaust his administrative remedies by submitting Grievance "20063023297." *Id*. at 8.

---

[2] The Court may take judicial notice of the filings in the State Court Matter. *Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Fed. R. Evid. 201(b).

On April 27, 2017, a copy of the summons and State Court Matter FAC were served upon Nancy Sanders, an NDOC administrative assistant, on behalf of Dzurenda, but Plaintiff never personally served Dzurenda. Exhibit C. The district court ultimately dismissed Dzurenda pursuant to Nevada Rules of Civil Procedure (NEV. R. CIV. P.) 4 due to Plaintiff's failure to serve him. Exhibit D. Plaintiff appealed the order and the Nevada Court of Appeals affirmed the district court's ruling. *Id*.

On January 28, 2019, Plaintiff filed a Motion requesting leave to amend the State Court Matter FAC to, among other things, assert claims against Bean and Dr. Bitar based upon allegations they denied him dental care on February 1, 2017. Exhibit E. On February 25, 2019, The Court granted the Motion and allowed Plaintiff to file a second amended complaint (State Court Matter SAC). Exhibit F. On August 29, 2019, Defendants filed a motion for summary Judgment. Exhibit G. Before the Court could rule on the Motion, Plaintiff filed a Motion for Voluntary Dismissal or Alternative Motion to Stay on August 28, 2019. *Id*. On September 16, 2019, the Court conducted a status check wherein Plaintiff stated he wanted to dismiss the State Court Matter so that he could pursue this matter. *Id*. The Court ultimately dismissed the matter without ruling on the Motion for Summary Judgment. *Id*.

**B.  Undisputed Facts Regarding Claims Against Howell and Buencamino**

Howell and Buencamino's involvement, or lack thereof, in this matter is limited to responding to Grievance 2006-30-23297.

On May 2, 2016, Carter submitted Grievance 2006-30-23297 for Informal Review and asserted that he had informed HDSP dental staff on February 20, 2016, that he needed dental treatment, and although Plaintiff had underwent an x-ray on April 21, 2016, the dental department was not treating his dental condition. *See* ECF No. 14-1 at 25-29. Howell received the Grievance (at the Informal Level) on May 9, 2016. *Id*. at 25. On June 15, 2016, Stewart denied the Grievance 2006-30-23297 at the Informal Level noting Plaintiff was again seen on April 29, 2016, and the list for dental examinations had increased due to the "modified lockdown" of Plaintiff's unit. *Id*. at 24. Stewart also confirmed Plaintiff would be seen at the next available appointment. *Id*. at 24. Howell signed and approved Stewart's response. *Id*. at 25.

On or about June 25, 2016, Plaintiff submitted Grievance 2006-30-23297 for First Level Review asserting that "there was and is 'no' reason it should have taken 147 days to be treated for a condition

that was determined by a dentist needed treatment." *Id.* at 23. On August 1, 2016, Buencamino responded to Grievance 2006-30-23297 at the First Level noting that on June 16, 2016, Plaintiff was "evaluated, examined and given the necessary dental treatment (filings) by the dentist" and that "several x-rays were performed and [Plaintiff] was advised if any other symptoms develop, submit a kite[3] and [he] would be scheduled accordingly." *Id.* at 22-23. Howell signed and approved of Buencamino's First Level response. *Id.* at 23.

On August 9, 2016, Plaintiff submitted Grievance 2006-30-23297 for Second Level Review which stated:

> It take (sic) 147 days to be treated for my serious medical needs upon treatment the dental doctor determined I had 4 more cavitys (sic) yet refused to treat them told me when I can no longer take the pain put in a kite I informed him I was in pain and if I put in a kite they will charge me against when I already here I was informed that I would be put on a dental plain this has not happen (sic) Please Help!

*Id.* at 21

On December 14, 2016, former NDOC Medical Director, Romeo Aranas, M.D., denied Grievance 2006-30-23297 at the Second Level after noting that on June 6, 2016, Plaintiff had one of three fillings completed, was provided pain medication, and underwent an x-ray. *Id.* at 20. He further noted that care is provided pursuant to a priority system and Plaintiff may submit a kite and will be responded to accordingly. *Id.*

**C.  Undisputed Facts Concerning Carter's Dental Care**

On April 21, 2016, Plaintiff was examined by Dr. Mangapit for treatment due to Plaintiff's complaints of bleeding gums and need for filings. Exhibit H; Exhibit I. The April 21, 2016, examination revealed Plaintiff had occlusal caries (decay on the top of the teeth). He was scheduled for fillings and provided a pain pack of ibuprofen. *Id.* There was no indication Plaintiff was suffering from infected teeth at the time of the April 21, 2016, examination. *Id.*

Plaintiff was seen on June 16, 2016, where he received a filling in tooth #31, which was the largest cavity so it did not worsen or require extraction. *Id.* At this June 16, 2016, visit, Plaintiff underwent four (4) x-rays, was given anesthetic, and was scheduled to have another filling. *Id.*

---

[3] A kite differs from a grievance in that it is a request, generally for medical treatment or medication, whereas a grievance it he manner in which an inmate submits an administrative complaint and begins the process of exhausting his or her administrative remedies.

On September 5, 2016, Dr. Mangapit put a filling in tooth #19, and informed Plaintiff to return if symptoms develop. *Id*. There is no evidence Plaintiff was suffering from an oral infection at the time of the September 5, 2016, examination. *Id*. Plaintiff was scheduled to have his third cavity filled on October 6, 2016, but the visit was cancelled due to an emergency recall by the prison. *Id*.

Whenever a scheduled visit is cancelled, it is the inmate's obligation to submit a kite to have it re-scheduled. *Id*. Following the emergency recall, Plaintiff did not submit any kites to reschedule the visit to have the third cavity filled. *Id*.

On January 6, 2017, Plaintiff submitted a kite stating he was "filing a civil complaint on the constitutional violations made by dental" and requested "the full name of these defendants which are dentist ass. And the name of [his] dentist." Exhibit J. On February 1, 2017, Plaintiff presented to Dr. Bitar and Bean. Ex. H; Ex. I. Plaintiff did not receive any treatment during the February 1, 2017, visit. *Id*.

After the visit, Dr. Bitar wrote the following on the January 6, 2017, kite: Seen 2/1/17. Patient stated that all dental treatment had already been completed. Requested information cannot be release via this form. *Id*.; Exhibit J. Following the January 6, 2017, kite, Plaintiff never submitted any kites to HDSP dental regarding his teeth. Exhibit H.

Dr. Bitar reviewed Plaintiff's dental x-rays taken on June 16, 2016, and it revealed the cavity in Plaintiff's tooth #18 (third tooth) was "minor" and would not be expected to be causing excruciating pain, loss of sleep, or inability to eat. *Id*. There is no evidence in Mr. Carter's medical chart to suggest was suffering from an oral infection or bleeding gums from April 21, 2016, through February 1, 2017. *Id*.

### D.  Undisputed Facts Regarding Claims Against Nash

Nash was an Associate Warden at HDSP who often responded to inmate grievances, but was unaware of Plaintiff's medical condition or alleged need for treatment.

On April 6, 2017, Plaintiff submitted Grievance 2006-30-46164 for Informal Level review asserting that "on or about February 1, 2017 [he] was placed on dental sick call by the A.G.s Office to correct a constitutional violation" and that the dentist refused to treat him and the dental assistant call him a crybaby because he had filed a lawsuit against her. Exhibit K; Exhibit L. Plaintiff further asserted that "[t]he actions of the white male dentist and assist Bean was 'retaliatory' and in direct violation of

[his] constitutional rights to be free from retaliation from filing grievance and civil complaints" and he "now fear[ed] for [his] safety and health here at (HDSP) pertaining to [his] dental care and officers related to defendants in (HDSP) dental program specifcly (sic) Lt. Bean." *Id*. Plaintiff's requested remedy was "[i]mmediate transfer to a different yard for permanet (sic) housing were(sic) [he] can receive adequate dental care free of retaliation and to persue (sic) a 1983 claim for retaliation and denial of dental care by (HDSP) dental program." *Id*.

NDOC Administrative Regulation (AR) 740 governs inmate grievances and responses thereto. *Id*.; Exhibit M. AR 740.05(4)(A) required an inmate to file an informal grievance "[w]ithin one (1) month if the issue involve[d] personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims." *Id*. AR 740.05(4)(B) requires an inmate to file an informal grievance "[w]ithin ten (10) days if the issue involves any other issues within the authority and control of the Department including, but not limited to, **classification**, disciplinary, mail and correspondence, religious items, and food." *Id*. (emphasis added).

At the time Carter submitted Grievance 2006-30-46164, Nash was an Associate Warden at HDSP. Exhibit K. Nash did not receive Grievance 2006-30-46164. *Id*. Nash did not provide a written response to Grievance 2006-30-46164. *Id*. Nash did not sign Grievance 2006-30-46164. *Id*. Nash did not review Grievance 2006-30-46164 until June 26, 2020. *Id*.

Interdepartmental transfers of inmates are governed by AR 552 and is a function of the NDOC Offender Management Division (OMD). *Id*.; Exhibit N. As an Associate Warden, Nash did not have authority to direct Plaintiff to be transferred to a different NDOC institution because that employment position is not within OMD. *Id*.; Exhibit. K.

On April 21, 2017, Plaintiff received an Improper Grievance Memo informing him that Grievance 2006-30-46164 was not accepted because it was "untimely." Exhibit K; Exhibit L.  Grievance 2006-30-46164 was not submitted beyond Informal Level review. *Id*. Grievance 2006-30-46164 was untimely pursuant to AR 740.05(4)(A) and (B). *Id*.

**E.  Undisputed Facts Regarding Claims Against Dzurenda**

Dzurenda was never served with a copy of the summons and complaint or amended complaint in the State Court Matter. Exhibit D. Dzurenda was dismissed from the State Court Matter due to Carter's

failure to timely serve him. *Id*. The Office of the Attorney General accepted service on his behalf, in this matter, on October 18, 2018. ECF No. 36.

### F.  Undisputed Facts Regarding Claims Against Williams

On July 17, 2017, Plaintiff sent Williams a kite. Exhibit O; ECF No. 14-1 at 52. As of July 17, 2017, Williams was the warden of HDSP. Exhibit O. As HDSP warden, Williams oversaw the daily operations of HDSP. *Id*. Williams was not responsible for providing dental care to Plaintiff, he was not qualified to render dental care to Plaintiff, and he had no authority to direct HDSP dental to provide Plaintiff with a specific course of treatment. *Id*. After receiving the kite, Williams contacted HDSP dental staff, informed them of the kite, and requested Carter be scheduled for an appointment. *Id*.

On July 17, 2017, Williams responded to Carter's kite informing him that he would be scheduled for a dental visit. *Id*. Following July 17, 2017, Williams was unaware of the dental care provided to Carter. *Id*.

### G.  Undisputed Facts Regarding Retaliation Claim Against Bean and Dr. Bitar

Carter's retaliation claims stem from allegations that Bean and Dr. Bitar refused to treat him on February 1, 2017, because Bean had been served in the State Court Matter the day prior. ECF No. 44 at 5: 10-14; 11: 9-13.

Bean was unaware that a copy of the summons and complaint in the State Court Matter had been received NDOC administrators on January 31, 2017. Exhibit P. Bean was not aware of the State Court Matter at the time Plaintiff presented to HDSP dental clinic on February 1, 2017. *Id*. The Complaint in the State Court Matter did not list Bean as a defendant. Exhibit A.

## III.    LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition

excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979). Conclusory or speculative testimony is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). An affidavit or declaration will not defeat summary judgment if it contains no more than conjecture or a scintilla of evidence insufficient to support a jury verdict. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). "A non-movant's bald assertions or a mere scintilla of evidence are both insufficient to withstand summary judgment." *FTC v. Stephanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (citing *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007)).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 473 (1962).

/ / /

## IV.   LEGAL DISCUSSION

### A.   Carter Cannot Establish the Material Elements of His Claims

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law. *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) *citing West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

#### 1.   Eighth Amendment Deliberate Indifference

To establish an Eighth Amendment deliberate indifference to a serious medical condition claim, an inmate must satisfy a two-part test: (1) that he has a "serious medical need" and "failure to treat [his] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain';" and (2) the defendants' response to the medical need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To determine whether the defendants' response was deliberately indifferent, an inmate must show the following: (1) the defendants' purposefully acted or failed to respond to the inmate's possible medical need; and (2) the indifference caused harm. *Id.* Notably, the officials' conduct must demonstrate "unnecessary and wanton infliction of pain" before it violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is a high legal standard; a medical professional's mistake, negligence, or malpractice is not sufficient to constitute deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Every claim by an inmate that he has not received adequate medical treatment does not constitute an Eighth Amendment violation. *Estelle* at 105. An inmate alleging deliberate indifference to serious medical need "must allege acts or omissions sufficiently harmful" to the inmate. *Id.* at 106.

##### a.   Nash Did Not Receive, Review, or Respond to Grievance 2006-30-46164

Carter's medical indifference claim against Nash rests upon allegations that she improperly denied Grievance 2006-30-46164 and failed to inform the HDSP dental department of Plaintiff's need for dental care. ECF No. 44 at 4:23-28. "[A] prison official cannot be found liable under the Eighth Amendment…unless the official knows of and disregards an excessive risk to inmate health or safety;

the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, it is undisputed Carter cannot establish Nash knew of and disregarded his alleged need for medical treatment. Specifically, Nash did not receive, respond to, or sign Grievance 2006-30-46164. Exhibit K; Exhibit L. The signature on the Grievance 2006-30-46164 is not "Jennifer Nash." *Id*. She had no contemporaneous knowledge that Plaintiff had submitted the Grievance and she did not review the Grievance until June 26, 2020. *Id*. Since there is no question of fact that Nash did not see know Plaintiff submitted Grievance 2006-30-46164, or know Plaintiff allegedly needed medical treatment, she could not have violated Plaintiff's Eighth Amendment rights. It is undisputed Plaintiff cannot establish Nash knew of and disregarded his alleged need for medical treatment.

Furthermore, even if Nash had received and denied Grievance 2006-30-46164, she still would not have violated Carter's Eighth Amendment rights because she did not have the authority to grant him the requested relief. In the Grievance 2006-30-46164, Carter complained of being retaliated against by an unidentified male dentist and female dental assistant. Ex. L. Additionally, the remedy requested in the Grievance was the "[i]mmediate transfer to a different yard for permanet (sic) housing were(sic) [he] can receive adequate dental care free of retaliation and to persue (sic) a 1983 claim for retaliation and denial of dental care by (HDSP) dental program." *Id*. OMD is solely responsible for intra-departmental transfers of inmates. Ex. K; Ex. N. Nash was not within OMD and she had no authority to transfer Carter as he requested. Ex. K. Since Nash did not possess the ability to grant Carter the relief expressly requested in the Grievance, she cannot be found to have personally participated in the alleged constitutional violation. *Jackson v. Nevada*, No. 216CV00995APGNJK, 2019 WL 6499106, at *8 (D. Nev. Dec. 3, 2019)("Without that authority [to change the inmate's diet], his mere denial of the grievance, alone, is insufficient to establish personal participation."); *see also Bradberry v. Nevada Dep't of Corr.*, No. 3:11-CV-00668-RCJ, 2013 WL 4702953, at *17 (D. Nev. Aug. 30, 2013)("A prison official's review and denial of an inmate's grievances, without more, cannot serve as a basis for liability under U.S.C. § 1983.").

/ / /

Additionally, Carter's Eighth Amendment claims against Nash and all other Defendants are barred because he failed to timely and properly exhaust his administrative remedies.[4] Specifically, pursuant to AR 740.05(4)(A), any medical claim or civil rights claim was to be filed within one month of the incident. Exhibit M. Pursuant to subsection (4)(B), any grievance regarding classification must have been filed within ten days of the issue arising. *Id*. On April 6, 2017, Carter submitted Grievance 2006-30-46164 alleging he was subjected to retaliation and not provided dental treatment on February 1, 2017, and he requested to be permanently transferred to another yard. Exhibit L. It was not pursued beyond the Informal Level. *Id*. The Grievance was untimely under both subsection (4)(A) and (B). If Grievance 2006-30-46164 is viewed as an attempt to grieve a medical issue or constitutional violation, the deadline to do so was March 1, 2017.  Exhibit M. To the extent the Court interprets the Grievance as a request to be transferred to a different facility (classification issue), the deadline to raise the issue was February 11, 2017. *Id*. Consequently, Grievance 2006-30-46164 was not submitted within the periods set forth in AR 740, and it was not pursued to the Second Level review.

The obligation under the Prison Litigation Reform Act requires inmates to comply with the "agency's deadlines and other crucial procedural rules." *Woodford v. Ngo* 548 U.S. 81, 92 (2006). Consequently, Carter did not comply with NDOC's procedural rules, and therefore, abandoned it. *Woodford*, 548 U.S. at 92; *Odoms v. Skolnik*, No. 3:09-CV-00223-RCJ, 2011 WL 2161391, at *5 (D. Nev. Apr. 18, 2011), *report and recommendation adopted*, No. 3:09-CV-00223-RCJ, 2011 WL 2160282 (D. Nev. May 31, 2011), *aff'd*, 474 F. App'x 602 (9th Cir. 2012)(dismissing complaint after finding the inmate failed to exhaust administrative remedies where inmate filed suit despite not pursuing grievance to second level because AR 740 provides instruction, inmates must file a second level grievance even if the inmate does not receive a response to the first level grievance).

Furthermore, there is no evidence to suggest Carter's administrative remedies were unavailable to him. *Ross v. Blake*, 136 S. Ct. 1850, 1858-1860 (2016). The record demonstrates that Grievance 2006-30-46164 was properly denied as being untimely under AR 740.05(4)(A) and (B)Exhibit L. Therefore, Carter cannot demonstrate prison officials were improperly "unwilling to provide any relief" to Carter. Similarly, AR 740 is not "so opaque" that Carter could not navigate the system. Exhibit M. On the

---

[4] Carter's First Amendment retaliation claims against Bean and Dr. Bitar also fail because he failed to properly and timely exhaust his administrative remedies via Grievance 2006-30-46164.

contrary, Carter had previously pursued Grievance 2006-30-23297 through Second Level review which demonstrates he understood the proper means of exhausting his administrative remedies. ECF No. 14-1 at 25-29. Likewise, there is no evidence in the record to suggest Carter was subjected to any machination, misrepresentation, or intimidation by any prison official during the grievance process. Accordingly, Carter's Eighth Amendment (and First Amendment) claims are barred.

### b. Dzurenda was not on notice of Carter's purported dental condition

Carter's Eighth Amendment claim against Dzurenda rests upon allegations that he was made aware Plaintiff was being deprived of dental care on April 21, 2017, when he was served a summons and complaint in regards to the State Court Matter yet failed to respond to that dental condition. ECF No. 44 at 5: 14-15, 6:24-28. However, Dzurenda was never personally served in the State Court Matter. Exhibit C. In fact, he was dismissed from the State Court Matter pursuant to NEV. R. CIV. P. 4 because Plaintiff did not serve him within the 120-day time period. Exhibit D. Consequently, the undisputed facts demonstrate Dzurenda was not served in the State Court Matter, and therefore, Dzurenda was not on notice of Carter's alleged dental conditions or that he had allegedly been denied care on February 1, 2017. Since Plaintiff cannot prove the first material element of his claim against Dzurenda, *Farmer*, 511 U.S. at 837 (requiring the prison official to be aware of the risk of harm), it fails as a matter of law.

Furthermore, even if Dzurenda had been served in the State Court Matter, he would not have had notice of the alleged unconstitutional conduct at issue in this matter. This matter revolves around allegations that Bean and Dr. Bitar denied Plaintiff dental treatment on February 1, 2017, and made retaliatory comments to him as a result of a prior lawsuit (the State Court Matter). *See generally* ECF No. 5. The State Court Matter FAC asserts an Eighth Amendment claim based upon facts that occurred, and medical treatment that was provided, prior to February 1, 2017. Exhibit B. The State Court Matter FAC does not assert Plaintiff was denied treatment by HDSP dental staff on February 1, 2017, or was subjected to retaliation. *Id*. It does not identify Dr. Bitar by name or reference him by his employment status. *Id*. The only dentist mentioned in the State Court Matter FAC is former HDSP dentist, Dr. Mangapit, who provided Carter dental care prior to February 1, 2017. *Id*.; Exhibit J. Consequently, the pleading would not have put Dzurenda on notice that Carter was allegedly in need of dental care as of February 1, 2017.
/ / /

Additionally, the Grievance identified in the Complaint by which Carter asserted he had exhausted his administrative remedies was Grievance 2006-30-23297, that was submitted on "5-2-16." Ex. B at 8. In Grievance 2006-30-23297, Carter complained of the length of time it took for him to receive dental care prior to February 1, 2017, not that Carter was denied dental care by Bean and Dr. Bitar or that he was suffering from an ongoing dental condition that required treatment. *See* ECF No. 14-1 at 25-29. Consequently, even if Dzurenda had been served and read the allegations in the State Court Matter FAC, and reviewed the corresponding Grievance, he would not have had notice Carter was denied dental treatment on or after February 1, 2017. "[A] prison official cannot be found liable under the Eighth Amendment…unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837. Nor would the NDOC director be involved in determining diagnosis or scheduling of medical treatment for an inmate. *Peralta v. Dillard* 744 F.3d 1076 (9th Cir. 2004). As such, Dzurenda is entitled to judgment as a matter of law.

### c. The responses to Grievance 2006-30-23297 by Howell and Buencamino do not constitute deliberate indifference

"A prison official's review and denial of an inmate's grievances, without more, cannot serve as the basis for liability under 42 U.S.C. § 1983." *Bradberry v. Nevada Dep't of Corr.*, No. 3:11-CV-00668-RCJ, 2013 WL 4702953, at *17 (D. Nev. Aug. 30, 2013)(*citing Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003)); *Padilla v. Nevada*, No. 3:07-CV-00442-RAM, 2010 WL 3463617, at *2 (D. Nev. Aug. 25, 2010), *aff'd sub nom. Padilla v. Brooks*, 540 F. App'x 805 (9th Cir. 2013)("Responding to a grievance, in and of itself, does not necessarily mean that [defendants] played a role in the alleged constitutional violations.").

Here, Carter's claims against Howell and Buencamino are premised allegations that they "knew that Plaintiff had a painful infected tooth that needed treatment, but nevertheless refused to give Plaintiff that treatment." ECF No. 44 at 4:5-28, 5:1-19; 7: 1-4. There are no allegations in the FAC that specifically identify how or when Howell or Buencamino were placed on notice of Carter's alleged dental condition. *See generally* ECF No. 14. Presumably, Carter's claim rests upon the fact that on August 1, 2016,

Buencamino responded to Grievance 2006-30-23297 at the First Level and Howell approved the response. *See* ECF No. 14-1 at 22.

Carter cannot establish that these Defendants personally participated in the alleged constitutional violations that purportedly occurred on February 1, 2017. Specifically, Buencamino provided his First Level response to Grievance 2006-30-23297, on August 1, 2016, and Howell approved the response on the same day. *See* ECF No. 14-1 at 22-23. This was approximately six months prior to the February 1, 2017, examination wherein Carter alleges he was denied dental care. ECF No. 44 at 4-5. Consequently, it is impossible for these Defendants to have personally participated in the denial of dental care to Carter when he had not yet purportedly requested, or been denied, dental care. Accordingly, the claims fail as a matter of law.

Alternatively, to the extent Carter's claims are premised upon improper, or lack of, dental treatment he received prior to February 1, 2017, the conduct of Howell and Buencamino does not constitute deliberate indifference. First, Grievance 2006-30-23297 failed to put the Defendants on notice that he was suffering from a serious medical condition at the time he submitted it for First Level Review. *See* ECF No. 14-1 at 22-23. The issue Carter complained of in Grievance 2006-30-23297 at the First Level was the amount of time it took for him to receive treatment, not the treatment itself. *Id*. Specifically, Carter criticized the HDSP "practice and police (sic)" regarding administering health care and asserted "there [was] 'no' reason it should have taken 147 days to be treated for a condition that was determined by a dentist needed treatment." *Id*. The Grievance does not assert that Carter was suffering from a contemporaneous dental condition that needed further treatment or that the treatment he received (fillings) was inadequate. *Id*. Consequently, Carter cannot prove either Buencamino or Howell actually knew Carter was suffering from a serious dental condition at the time they provided their response. Thus, the claims against them should be dismissed because "a prison official cannot be found liable under the Eighth Amendment…unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Furthermore, Carter cannot establish the "subjective" prong of the claim. In *Peralta v. Dillard*, 744, F.3d 1076 (9th Cir. 2004), the inmate's deliberate indifference claim against the medical director,

Dr. Fitter, rested entirely on the fact that Dr. Fitter signed the second-level administrative appeal the inmate had filed to request dental treatment. *Id.* at 1086. The *Peralta* Court affirmed the trial court's ruling and held that even though Dr. Fitter signed the form, the signature did not mean that Dr. Fitter knew about the inmate's complaints, and in fact, the inmate had not shown Dr. Fitter "should have been aware of any risk to [the inmate's] health, let alone that [Dr.] Fitter was actually aware. *Id.* The *Peralta* Court's ruling was based upon its findings that although Dr. Fitter supervised the dental department, his role was "largely administrative, ensuring that the proper personnel had signed off on a reasonable course of treatment, not second guessing staff dentists' medical judgments." *Id.*

Buencamino and Howell's involvement, or lack thereof, in responding to Grievance 2006-30-23297 falls squarely within *Peralta*. In responding to the Grievance, Buencamino reviewed Carter's medical chart and noticed that he had presented to Dr. Mangapit on at least two occasions and had received fillings. *See* ECF No. 14-1 at 22-23. Buencamino further noted that Carter had been advised by Dr. Mangapit to submit a kite if any further symptoms developed. *Id.* Howell approved Buencamino's response. *Id.* There was nothing in the medical chart that would have put Buencamino or Howell on notice that Carter was suffering from an ongoing emergency dental issue or being denied dental treatment by HDSP dental staff. Exhibit I. On the contrary, the medical chart demonstrated Carter was not suffering from any emergency oral infection and had been multiple times to have two cavities filled. Exhibit I.

Equally important, like the grievance responder in *Peralta*, Buencamino and Howell were not in positions to second guess the treatment rendered by Dr. Mangapit. *Id.* They were not dentists, and they were not responsible for determining Carter's course of medical treatment. Exhibit L. Consequently, the undisputed facts demonstrate that neither Buencamino nor Howell purposefully failed to respond to Carter's need for dental care because Carter's dental condition was being treated. *Jett*, 439 F.3d at 1096. Thus, Carter's claims against these Defendants fail as a matter of law.

### d. Carter's claims against Dr. Bitar and Bean fail because he did not suffer from a serious medical condition

"Dental care is one of the most important medical needs of inmates." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). "Accordingly, the eighth amendment requires that prisoners be provided with a system of ready access to adequate dental care." *Id.* "Prison officials are deliberately indifferent

to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Id*. at 201 (*quoting Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Mere indifference, medical malpractice, or negligence is not enough, *see Broughton v. Cutter Lab*., 622 F.2d 458, 460 (9th Cir. 1980); a prisoner must allege facts sufficient to indicate a culpable state of mind on the part of prison officials, *see Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991). A mere delay in providing dental treatment to an inmate is not a constitutional violation. *Hunt*, 865 F.2d at 200. A difference of opinion regarding the proper course of treatment does not rise to the level of deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A constitutional violation occurs where the "course of treatment the doctors chose would be medically unacceptable under the circumstances (citations omitted), and [] they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

With respect to Eighth Amendment deliberate indifference to dental condition cases, the Ninth Circuit has established that a plaintiff must demonstrate a question of fact exists as to whether he suffered from a condition beyond a simple cavity in order to survive summary judgment.

In *Swartz v. Steinhauser*, 125 F.3d 859, 1997 WL 599547 at 1 (9th Cir. Sept. 26, 1997), the Ninth Circuit rejected an inmate's allegations that prison officials were "deliberately indifferent to his dental needs by refusing to repair the fillings in his teeth and failing to see him promptly." *Id*. at 1. The *Swartz* Court noted that the record demonstrated the inmate was offered dental treatment in the form of teeth extraction, and the fact that the inmate disagreed was a difference in opinion as to the proper course of treatment and not deliberate indifference. *Id*. The Court further noted that the condition of inmate's teeth was not serious enough that it had to be treated as a medical emergency.[5] *Id*.; *see also Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002)(finding the prison's "lack of routine teeth cleaning" did not constitute "deliberate indifference to a serious medical needs.").

---

[5] Defendants/Appellees' Answering Brief demonstrated that although the inmate submitted a grievance alleging he had broken fillings and severe pain, the results of the examination and tests "were inconsistent with the severity of pain that [the inmate] claimed to be suffering" and the dentist "found none of the broken fillings [the inmate] had reported." *Steve Swartz*, Plaintiff/Appellant, v. *Gale Steinhauser, et al*., Defendants/Appellees., 1997 WL 33555462 (C.A.9), 6. Further, the dentist determined the inmate had "two impacted wisdom teeth [] resulting in a neighboring tooth (#33) sustaining distal bone loss, and a tooth (#2) containing good feeling but with recurrent caries [] requiring a crown or root canal." *Id*. The record does not indicate that tooth #2 was ever treated or care for tooth #2 recommended. *Id*.

In *Hunt*, the Ninth Circuit reversed the district court's granting of summary judgment (a motion to dismiss that was analyzed under Rule 56) in favor of the defendants. 865 F.2d 198, 201.There the allegations were that "prison officials were aware of his bleeding gums, breaking teeth and his inability to eat properly [after he lost his dentures], yet failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted." *Id*. The *Hunt* Court concluded these allegations were "sufficient to state a claim of deliberate medical indifference under section 1983." *Id*. at 200. The *Hunt* Court further held that "[a]s the factual record is developed, it may turn out that Hunt's dental problems were not as serious as he alleges, or that [defendants were not] deliberately indifferent to Hunt's need for dental care." *Id*. at 201; *See also Finley v. Parker*, 253 F. App'x 634, 635 (9th Cir. 2007)(finding fragmented tooth that required extraction and interfered with inmate's daily life by impeding his ability to eat and drink without undue discomfort" to be a serious medical condition); *Meeks v. Allison*, 290 F. App'x 4, 5 (9th Cir. 2008)(holding infected that infected teeth, loss of weight due to difficulty chewing, and considerable pain to be a serious medical condition).

Here, Carter cannot demonstrate Bean and Dr. Bitar were objectively deliberately indifferent because he was not suffering from a serious dental condition as the time he presented to the HDSP dental department on February 1, 2017. Bean and Dr. Bitar assert they never refused to provide Carter dental care on February 1, 2017, and instead, submit Carter did not request any care. Notwithstanding, even if it is assumed that Bean and Dr. Bitar refused to administer dental care to Carter, the objective evidence demonstrates Carter was not suffering from a serious dental condition that required emergency care.

Like *Swartz*, the symptoms Carter alleges here are not supported by the results of the dental examinations and objective medical evidence. The inmate in *Swartz* had, among other dental conditions, a tooth with "recurrent caries" (cavities) that required a crown a root canal that apparently was not treated. *Swartz*, 125 F.3d 859, WL 599547 at 1. Yet, *Swartz* ruled his dental condition (cavities that required a crown and root canal) was not a serious medical condition. *Id*. Like the inmate in *Swartz*, here, Plaintiff's x-rays objectively demonstrate he had "minor" cavity in tooth #18 that was not the type that would cause excruciating pain, loss of sleep, or inability to eat. Exhibit H. There is also no evidence that Carter cavity required immediate dental care. *Id*. Consequently, like the situation in *Swartz*, Carter's alleged complaints were belied by the objective evidence and his minor cavity, alone, was not a serious medical condition.

Furthermore, unlike the allegations in *Hunt*, the medical records demonstrate that Carter did not need dentures, and he was not suffering from oral infection or bleeding gums at the time he presented to Dr. Manapit on April 21, 2016, June 16, 2016, or September 5, 2016, respectively. *Id*. This is further corroborated by the fact that after receiving the second filling at the September 5, 2016, visit, Plaintiff never submitted a kite to the HDSP dental department complaining of pain, infection, or bleeding gums, or requesting dental care. Exhibit H. Instead, the only kite relating to dental issues was submitted on January 6, 2017, wherein Carter requested the names of HDSP dental staff for the State Court Matter. *Id*.; Exhibit J. As such, this matter is factually distinguishable from *Hunt,* and Carter cannot demonstrate a question of fact exists as to whether his alleged dental condition was more serious than a minor cavity.[6]

Additionally, the fact that Dr. Mangapit had scheduled Carter to receive a filling to tooth #18 prior to February 1, 2017, does not create an issue of fact as to whether Bean and Dr. Bitar were deliberately indifferent. A mere "difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004)(*citing Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health'" *Id*. Carter cannot present expert testimony to create a question of fact as to whether Bean and Dr. Bitar's non-treatment of a non-emergent cavity was medically unacceptable or in disregard of a serious health risk. On the contrary, the medical records establish Carter had a minor cavity that is not the type to cause severe pain, sleep loss, or inability to eat. Exhibit H; Exhibit I. The medical records further demonstrate that Plaintiff was not suffering from oral infection or bleeding gums. *Id*. Carter's dental condition was less severe than that of the inmate in *Swartz,* 125 F.3d 859, WL 599547 at 1 (recurrent cavities requiring a root canal or crown) which the 9th Circuit determined was not a serious dental condition and not remotely similar to the alleged conditions of the inmate in *Hunt,* 865 F.2d at 201 (severe oral infection that prevented the inmate from eating).

---

[6] Additionally, this matter is distinguishable from *Hunt* because discovery is closed. The *Hunt* Court reversed summary judgment in favor of the defendants to allow the parties an opportunity to conduct discovery. More specifically, the defendants moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), but the district court treated it as a motion pursuant to Rule 56. On appeal, the *Hunt* Court examined the sufficiency of the allegations in the Complaint to determine whether it stated a colorable deliberate indifference claim pursuant to Rule 12(b)(6). *Id*. at 200-201.

Carter cannot demonstrate a question of fact exists as to whether he suffered from a serious dental condition as of February 1, 2017. At most, Carter can establish a disagreement with Bean and Dr. Btiar regarding the course of treatment he received, which cannot as a matter of law support an Eighth Amendment medical indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Thus, the present Motion should be granted.

### e.   Claim against Williams

Carter's claim against Williams rests upon allegations that Plaintiff informed Williams, through a kite and a personal interaction, that he was being denied dental care for his third tooth (#18). ECF No. 44 at 5:2-7; ECF No. 14-1 at 51. Williams was the warden of HDSP. Exhibit O. He was not responsible for Carter's medical treatment, and he was not qualified to render medical treatment to Carter. *Id*. He had no authority to direct HDSP dental department to provide Carter with a specific course of dental care. *Id*. Instead, he oversaw the daily operations of HDSP. *Id*. Once he received Carter's kite, he contacted the HDSP dental department and requested Carter be seen. *Id*. He then responded to Carter's kite. *Id*. His role, or lack thereof, in responding to Carter's kite is analogous to the physician in *Peralta*. 744 F.3d 1076. As such, the claim against Williams fails as a matter of law.

Furthermore, this claim fails as a matter of law because Carter was not suffering from a serious dental condition at the time of these purported communications with Williams. Instead, Carter had a minor cavity with no clinical or objective findings of oral infection. Exhibit H; Exhibit I. Carter had also been seen on numerous occasions by HDSP dental department and been provided fillings on two teeth. *Id*. Since Carter was not suffering from a serious dental condition, it is impossible for Williams to have been deliberately indifferent to Carter's serious dental condition. *Farmer*, 511 U.S. at 837.

### 2.   First Amendment Retaliation

In the prison context, a claim for First Amendment retaliation under § 1983 must establish five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Id*. The plaintiff must allege either a chilling

effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison* v. *Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Mere speculation that a defendant acted in retaliation is insufficient at the summary judgment stage. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). A plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)(*quoting Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir. 1989)).

Here, Carter's speculation is insufficient to establish the State Court Matter was the "substantial" or "motivating" factor behind Bean and Dr. Bitar's alleged refusal to provide him dental care. Carter's retaliation claim is premised upon allegations that on January 31, 2017, Bean was served with a copy of the summons and complaint in the State Court Matter, and as a result thereof, Bean called him a "cry baby" and Dr. Bitar refused to provide him treatment unless he dismissed the State Court Matter. ECF No. 44 at 5:8-15, 11: 9-16; ECF No. 14 at 6 at¶¶6-16. However, Carter cannot prove Bean knew he had sued her in the State Court Matter at the time he presented to the HDSP dental clinic on February 1, 2017. Therefore, he cannot establish Bean and Dr. Bitar refused to provide him treatment as a result of filing the State Court Matter.[7]

Carter served a copy of the summon and complaint in the State Court Matter upon HDSP Human Resources Administrator, Katie Gutierrez, on behalf of Bean. ECF No. 14-1 at 53. Bean was not personally served on this day or February 1, 2017. Exhibit P. As of February 1, 2017, Bean was unaware of the State Court Matter because she had not been notified of it by the HDSP Human Resources Department. Exhibit P. Since Bean was not aware that Carter filed the State Court Matter at the time he presented on February 1, 2017, Carter cannot demonstrate the State Court Matter was the "substantial" factor in Bean's alleged statements and Dr. Bitar's purported refusal to provide Carter dental care. Carter's speculation as to why he allegedly was not provided treatment on February 1, 2017, is insufficient to defeat the present motion. *Wood,* 753 F.3d at 904 (9th Cir. 2014) (affirming grant of summary judgment when there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

---

[7] Carter cannot establish Bean or Dr. Bitar engaged in adverse conduct because did not require dental treatment at the time he presented to Bean and Dr. Bitar on February 1, 2017. *See* Supra Section IV(A)(1)(d). Even if it is assumed Carter requested dental treatment and it was denied, the objective medical records demonstrate Carter did not suffer from symptoms that necessitated dental care. Exhibit L.

Notwithstanding, even if Bean had been provided notice of the State Court Matter by HDSP Human Resources Department, she was not a defendant in that case. Exhibit A. Carter sued "John Doe (H.D.S.P. Dentist)," "S. Burns (Dentist Ass.)," "Jane Doe (Dentist Ass.)," the State of Nevada, and James Dzurenda. *Id*. Since Bean was not a defendant in the State Court Matter, Carter cannot set forth a nexus of facts that links the State Court Matter to the instant litigation. "[M]ere temporal proximity of First Amendment activity without additional evidence is not sufficient to create a triable issue of fact concerning pretext." *Mariano v. State of California*, 53 F. App'x 440, 441 (9th Cir. 2002)(citing *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)). Thus, Carter's retaliation claim fails as a matter of law.

### 3.   Defendants are entitled to qualified immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity also protects government officials from liability for good faith misjudgments and mistakes. *See Butz v. Economou,* 438 U.S. 478, 507 (1978). The Supreme Court has stressed that immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). To determine if qualified immunity applies, the court considers whether the facts alleged by the plaintiff set forth a violation of a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court also considers whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

The burden of establishing that a right was "clearly established" at the time of the alleged misconduct is the Plaintiff's. *Green v. Camreta,* 588 F.3d 1011, 1031 (9th Cir. 2009). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. *Inouye v. Kemna,* 504 F.3d 705, 712 (9th Cir. 2007); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). For a legal principle to be "clearly established," it "must have a sufficiently clear

foundation in then-existing precedent. The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.' It is not enough that a rule is suggested by then-existing precedent." *D.C. v. Wesby*, 138 S.Ct. 577, 589-90 (2018) (*quoting Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam) and *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)); *see also Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) (referencing the absence of "any case – let alone a controlling case or a robust consensus of cases – that clearly established the proposed right).

The Supreme Court has repeatedly stressed that when analyzing whether the law is clearly established the court must not "define clearly established law at a high level of generality." *See White v. Pauly*, 137 S.Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *Sheehan v. City & Cty. of S.F.*, 135 S.Ct. 1765, 1776 ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."). Instead, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S.Ct. at 552. Whether a right is "clearly established" so that a public official who violated that right would have no qualified immunity is a question of law. *Thompson v. Mahre*, 110 F.3d 716, 721 (9th Cir. 1997)(*quoting Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

### a.   Medical indifference claim against Dzurenda

Dzurenda is entitled to qualified immunity under both prongs of the doctrine. The undisputed facts demonstrate Dzurenda was not deliberately indifferent to Carter's medical condition because he was unaware of it. *See* Supra Section VI(A)(i). Accordingly, he did not violate Carter's Eighth Amendment rights.

He is entitled to qualified immunity under the second prong of the doctrine because it was not clearly established that he could be deliberate indifferent to Carter's alleged need for dental treatment when he had no knowledge of Carter's alleged medical condition. Instead, the law is clearly established that "a prison official cannot be found liable under the Eighth Amendment…unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

Under *Farmer*, Dzurenda could have been deliberately indifferent to Carter's dental condition only if he was on notice of the dental condition and that Carter was subjected to a substantial risk of serious harm as a result thereof. *Id*. The undisputed facts demonstrate Dzurenda was not served in the State Court Matter, and Carter cannot prove the factual predicate upon which his medical indifference claim against Dzurenda is premised. Consequently, Carter cannot present any "controlling authority," *D.C.,* 138 S.Ct. at 589-90, to suggest Dzurenda could be liable on the particularized facts of this case. *White*, 137 S.Ct. at 552. There is also no case law that would expose a NDOC Director to liability under the facts in this matter. *Cf Peralta,* 744 F.3d 1076. Thus, the claims against Dzurenda fail as a matter of law.

### b. Medical indifference claims against Nash, Dzurenda, Buencamino, and Howell

Defendants Nash, Dzurenda, Buencamino and Howell are entitled to qualified immunity under the first prong of the doctrine because they did not personally participate in, and were unaware of the alleged denial of, the medical treatment that Carter asserts occurred on February 1, 2017. *See* Supra Section VI(A)(ii).

Furthermore, these Defendants are entitled to qualified immunity under the second prong because they lacked the requisite notice that their lack of involvement in responding to Grievance 2006-30-46164 could violate plaintiff's "clearly established" Eighth Amendment rights. "A prison official's review and denial of an inmate's grievances, without more, cannot serve as the basis for liability under 42 U.S.C. § 1983." *Bradberry v. Nevada Dep't of Corr.*, No. 3:11-CV-00668-RCJ, 2013 WL 4702953, at *17 (D. Nev. Aug. 30, 2013)(*citing Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)); *Padilla v. Nevada*, No. 3:07-CV-00442-RAM, 2010 WL 3463617, at *2 (D. Nev. Aug. 25, 2010), *aff'd sub nom. Padilla v. Brooks*, 540 F. App'x 805 (9th Cir. 2013)("Responding to a grievance, in and of itself, does not necessarily mean that [defendants] played a role in the alleged constitutional violations."). There must be a causal connection between the denial of the grievance and the alleged constitutional violation. *Bradberry*, 2013 WL 4702953 at 17(*citing Arnold v. Int'l. Bus. Machs. Corp*., 637 F.2d 1350, 1355 (9th Cir. 1981)).

The undisputed facts demonstrate these Defendants did not review or deny Grievance 2006-30-46164, and therefore, their lack of participation in responding to Grievance 2006-30-46164 could not have been causally connected to the alleged denial of treatment on February 1, 2017. Consequently, a

reasonable prison official in the position of Nash, Buencamino, Howell, and Dzurenda could not have known that they could violate Plaintiff's Eighth Amendment rights based upon the particularized facts of this case. *White*, 137 S.Ct. at 552. As such, they are entitled to qualified immunity.

### c. Medical indifference claims against Dr. Bitar and Bean

There is a question of fact as to whether Dr. Bitar or Bean denied Carter medical treatment on February 1, 2017. Notwithstanding, it is undisputed that Carter did not suffer from a serious dental condition that affected his daily activities. Ex. H; Ex. I. Consequently, there was no Eighth Amendment violation, and therefore, qualified immunity is appropriate under the first prong of the doctrine.

However, even if the Court were to find a question of fact exists as to whether Carter suffered from a serious medical condition, Bean and Dr. Bitar are entitled to qualified immunity under the second prong. While it is established that Carter had an Eighth Amendment right to dental care, *Hunt*, 865 F.2d at 200, he cannot demonstrate that he had a clearly established right to receive a filling on a tooth with a minor cavity (with no indication of oral infection) that would not cause severe pain, loss of sleep, or inability to eat. On the contrary, the Ninth Circuit has held that failing to treat a tooth with recurrent cavities that did not require emergency medical treatment is not an Eighth Amendment violation, particularly where the clinical examination undermined the inmate's pain complaints. *Swartz*, 125 F.3d 859, WL 599547 at 1; *Cf Hunt*, 865 F.2d 200(holding allegations that prison officials knew for four months that oral infection and the loss of inmate dentures caused severe pain, bleeding gums, broken teeth, and inhibited the ability to eat was sufficient to state a claim of medical indifference). Like the inmate in *Swartz*, Carter's allegations of severe pain, oral infection, bleeding gums, and inability to eat are belied by three dental examinations, dental x-rays, and his January 6, 2017, kite where he requested the names of the HDSP dental staff for purposes of a lawsuit. Exhibit H; Exhibit I. Carter cannot present any medical evidence to suggest he had more than a minor cavity as of February 1, 2017. The undisputed facts demonstrate this case falls almost squarely within *Swartz*. Consequently, even if it is assumed Bean and Dr. Bitar expressly refused to treat Carter, neither were on adequate notice that failing to treat a non-emergency cavity with no objective findings to support serious symptomatology or pain would violate Carter's Eighth Amendment rights. As such, they are entitled to qualified immunity in regards to Carter's medical indifference claims.

### d.   Retaliation claim against Bean and Dr. Bitar

Carter's retaliation claims are premised upon allegations that Bean and Dr. Bitar refused to provide him treatment because Bean was served with a copy of the summons and complaint in the State Court Matter the day prior to Carter's February 1, 2017, visit. ECF No. 44 at 11:1-16; ECF No. 14 at 9.

As set forth above, Bean and Dr. Bitar are entitled to qualified immunity under the first prong of the doctrine because Carter cannot prove the State Court Matter was the substantial factor in the alleged retaliatory actions of Bean and Dr. Bitar. *See Supra* Section VI(A)(ii).

These Defendants are also entitled to qualified immunity under the second prong. It is clearly established that an official cannot retaliate against an inmate for engaging in constitutionally protected activity. *See Pratt v. Rowland,* 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes."). However, based upon the particularized facts of this case, a reasonable prison official in the position of Bean or Dr. Bitar would not know that they could violate Plaintiff's First Amendment rights when the undisputed facts demonstrate they were unaware of the alleged motive for the retaliation. Bean was not personally served in the State Court Matter, and had no knowledge of it, prior to the February 1, 2017, visit. Exhibit P.  Bean had no knowledge that an NDOC administrator accepted service of the State Court Matter on her behalf. *Id*. Furthermore, as of February 1, 2017, neither Bean nor Dr. Bitar were defendants in the State Court Matter. Exhibit A. Carter did not name Bean as a defendant in the State Court Matter until he filed the State Court Matter FAC on February 22, 2017. Exhibit B. Curiously, the State Court Matter FAC did not assert any causes of action against Bean or Dr. Bitar as a result of his alleged interaction with them on February 1, 2017. *Id*. Carter named Dr. Bitar as a defendant in the State Court matter on February 25, 2019. Exhibit F. Based upon the facts of this case, it was not clearly established in the Ninth Circuit that Bean and Dr. Bitar could violate Carter's First Amendment rights by purportedly refusing to treat a non-serious cavity in retaliation to a lawsuit of which they were unaware and not defendants to. On the contrary, a prison official may be liable for retaliation only if they took adverse action toward the inmate because the inmate exercised his First Amendment rights. *Rhodes v. Robinson*, 408 F.3d at567–68. Since neither Bean nor Dr. Bitar were on requisite notice that they alleged conduct could be constitutional infirm, they are entitled to qualified immunity.

## V.    CONCLUSION

Defendants are entitled to summary judgment because all of Carter's claims fail as a matter of law. The Eighth Amendment claims against Buencamino, Howell, Dzurenda, and Nash fail because these Defendants were totally unaware Carter alleged need for dental care. The medical indifference claims against Bean and Dr. Bitar fail because Carter did not suffer from a serious dental condition for which he was denied care. Instead, he had, at most, a minor cavity that did not require emergency dental care. The medical indifference claim against Williams fails because he is not qualified to administer care, second guess the course of treatment administered to Carter, and he contacted the HDSP dental department to schedule Carter a visit upon receiving Carter's kite.

Carter's First Amendment against Bean and Dr. Bitar fails because Carter cannot prove either Defendant took adverse action against him on February 1, 2017, as a result of the State Court Matter. On the contrary, neither of these Defendants were aware of, or defendants in, the State Court Matter at the time Carter's February 1, 2017, examination.

Furthermore, Defendants are entitled to qualified immunity under both prongs of the doctrine. None of the Defendants violated Carter's constitutional rights, and therefore, they are entitled to qualified immunity under the first prong of the doctrine. The Defendants are also entitled to qualified immunity under the second prong because they were not on adequate notice their conduct could constitute a violation of Carter's constitutional rights. It was not clearly established that Howell, Buencamino, Nash, or Dzurenda could be found to be deliberately indifferent to Carter's dental condition without having any notice or knowledge thereof. Similarly, it was not clearly established that Williams, Bean, and Dr. Bitar could have violated Carter's Eighth Amendment rights by failing to schedule treatment or refusing to treat a non-emergency, minor cavity that did not negatively impact Carter's daily activities. Likewise, it was not clearly established that Bean and Dr. Bitar could violate Plaintiff's First Amendment rights by allegedly refusing to provide dental treatment to Carter due to a lawsuit of which they were not aware.

DATED this 30th day of July, 2020.

AARON D. FORD
Attorney General
By: /s/ Wade J. VanSickle
          Wade J. VanSickle (Bar No. 13604)
          Deputy Attorney General
          *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on July 30, 2020, I electronically filed the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** and **APPENDIX OF EXHIBITS**, via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically. For those parties not registered, service was made by mailing a copy to the following:

> Shannon Carter #70773
> Warm Springs Correctional Center
> P.O. Box 7007
> Carson City, NV 89702
> WSCCLawLibrary@doc.nv.gov
> *Plaintiff, Pro Se*

/s/ Diane Resch
Diane Resch, an employee of the
Office of the Nevada Attorney General