LUKE A. BUSBY, ESQ
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SHANNON CARTER, | Case No.: 2:17-cv-01628-RFB-EJY |
| Plaintiff, | **RESPONSE IN OPPOSITION TO MOTION FOR RECONSIDERTAION OF ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| S. BEAN and DR. BITAR, et al., | |
| Defendants. | |
| _____/ | |

COMES NOW, SHANNON CARTER ("Carter" or "Plaintiff"), by and through the undersigned counsel, and file the following Response in Opposition to the Defendants' Motion for Partial Reconsideration of Order Granting in Part, Denying in Part, Defendants' Motion for Summary Judgment (ECF #88).

This Opposition is made and based upon all the pleadings and records on file for this proceeding together with every exhibit that is mentioned herein or attached hereto, if any there be, as well as the points and authorities set forth directly hereinafter.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Defendants argue that the Court committed clear error when it held that the Plaintiff exhausted his administrative remedies for his First Amendment retaliation claims against Defendants Dr. Bitar and Bean because the Plaintiff's Grievance No. 2006-30-46164 was untimely, and as such, the Plaintiff did not meet the requirements of the Prison Litigation Reform Act ("PLRA").

1

The Motion should be denied for two primary reasons: (1) The Motion is procedurally improper; and (2) the Court's Order was correct in concluding that the Plaintiff met the exhaustion requirements of the PLRA.

**The Defendant's Motion is procedurally improper**

The Court issued its order denying the Plaintiff's motion and granting in part Defendants' motion for summary judgment on November 30, 2020 at ECF #89.  On December 14, 2020, the Defendants filed the Motion seeking relief under Local Rule 59-1.  The Motion seeks relief solely on the grounds that the Plaintiff failed to exhaust his administrative remedies under the PLRA for his First Amendment retaliation claim.

Local Rule 59-1(b) expressly states that "A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts."  Yet, it is perfectly clear that the Motion simply recycles and repeats the same argument made in the Defendants' Motion for Summary Judgment at ECF #69 footnote 4: Because Carter's grievance (Grievances 2006-30-46164) was untimely, he failed to exhaust his administrative remedies with respect to his First Amendment retaliation claim.  As such, the Motion is procedurally improper under Local Rule 59-1 and should be denied on that basis alone.

As a collateral matter, on December 17, 2020, the Defendants filed a Notice of Appeal (ECF #89) of this matter but noted in the Notice of Appeal that because the Motion for Reconsideration does not address qualified immunity, it may not be a tolling motion under FRAP 4(a)(4).  Under Local Rule 59-1, "The court possesses the inherent power to reconsider an interlocutory order for cause, so long as the Court retains jurisdiction…"  The Clerk of the Court at the 9th Circuit Court of Appeals issued an order on January 7, 2021 holding appellate proceedings in abeyance pending the resolution of the Defendants' Motion. *See* Exhibit 1. However, under FRAP 4(a)(4)(A), a "motion for reconsideration" does not fall under any of the categories of motion that permits a notice of appeal to become effective when the order disposing of the motion is entered. See FRAP 4(a)(4)(B)(i).  A timely notice of appeal divests the district court of jurisdiction over matters related to the appeal. See *Natural Res. Def. Council v.*

*Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982)). *Gilda Industries, Inc. v. United States*, 511 F.3d 1348, 1350 (Fed. Cir. 2008). Although the Notice of Appeal (ECF #89) states that the Defendants are seeking review of the District Court's denial of qualified immunity in denying the motion for summary judgment, that issue is "related" to the denial of summary judgment. The grounds, that Carter adequately exhausted his administrative remedies, are subject to the same Order where the Court denied qualified immunity to Dr. Bitar and Bean for Carter's First Amendment claim.

**The Defendants were on notice of the nature of the Plaintiff's claim, which he fully grieved, and no remedy was available to the Plaintiff**

In its Order denying summary judgment in part at #ECF 87, the Court specifically noted concluded that "Carter has exhausted his administrative remedies with respect to claims against Defendants Bean and Dr. Bitar. Plaintiff submitted numerous grievances explicitly protesting HDSP's delay of treatment and the pain he experienced due to the lack of treatment." *Id.* at 8-9. In footnote 2, the Court found that the Defendants and HDSP were on notice of the nature of the wrong for which redress is sought for Carter's First Amendment retaliation claim against Bean and Dr. Bitar. The Defendants argue that NDOC was not placed on notice that Bean and Dr. Bitar refused to provide him with care in retaliation for Carter filing his lawsuit. However, the PLRA does not require that a grievance include legal terminology or legal theories, which is essentially what the defendants are asking the Court to conclude, unless they are in some way needed to provide notice of the harm being grieved. *Griffin v. Arpaio*, 557 F.3d 1117, 1118 (9th Cir. 2009). As this Court concluded, "a grievance is sufficient for exhaustion purposes 'if it alerts the prison to the nature of the wrong for which redress is sought.' *Griffin*, 557 F.3d at 1120 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). It is inarguable that Carter's grievances dated May 2, 2016, June 24, 2016, and August 9, 2016 put the Defendants on notice under the PLRA that the staff at HDSP was refusing to treat his dental issues.

The Plaintiff's April 6, 2017 (ECF #49 page 27) informal grievance, while clearly an attempt to seek further help, despite the risks, is for the same issue, i.e., the refusal of the Dr.

3

Bitar and Bean to treat his dental issues. In other words, although the Plaintiff sought further relief by filing another informal grievance it was not required under the PLRA's exhaustion requirement as it arose from the same facts and circumstances that gave rise to Carter's Eighth Amendment claim about which the Defendants were already on notice. As explained below, an inmate who has already exhausted the grievance procedure for a claim risks punishment under NDOC's Administrative Regulations if he continues to try and grieve about the same situation.

Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay, or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1984). The "deliberate indifference" rule applies to physical, dental, and mental health. *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). While the Defendants argue in the Motion that the Court did not find any facts that suggest Carter's administrative remedies were unavailable to him pursuant to *Ross v. Blake*, 136 S.Ct. 1850 (2006), this conclusion is implied by the facts of the case. As the Court determined in its Order, the Defendants were on notice of the nature of the wrong for which Carter was seeking relief when he exhausted his administrative remedies. The PLRA does not require exhaustion when circumstances render administrative remedies effectively unavailable. *Nunez v. Duncan*, 591 F.3d 1217, 1223 (9th Cir. Or. 2010). Carter was in extreme pain due to the issues with his teeth, had fully grieved this issue, and then was retaliated against for filing a lawsuit. In essence, he was further denied treatment because he was actively pursuing his right to be free from deliberate indifference at the hands of the NDOC Defendants.

At the February 1, 2017 appointment, Carter was informed that his continued complaints and his filing of kites was the basis for Dr. Bitar and Bean's refusal to treat him. "In light of our precedent, we find it difficult to accept the proposition that an administrative remedy is available in any meaningful sense if its use will result in serious retaliation and bodily harm. We therefore conclude that when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be "available." *Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011).

4

Carter was punished by Dr. Bitar and Bean for filing a lawsuit. *I.e.,* Carter was forced to wait an inordinate amount of time for treatment of his dental issues in retaliation for his seeking relief under the grievance process in the first place and for refusing to waive any right he had to sue Dr. Bitar and Bean. Carter testified as follows:

> On February 1st I was sent to dental for a dental call sick called in by the AG's office. And I understand that he stated that for some reason he didn't know that I -- what I was there for. But they knew who I were -- who I was, they knew I had filed multiple grievances, they knew I had filed multiple kites complaining about their office, they knew I filed a civil lawsuit, and they knew I was in pain. When I went up there February 1st, I asked for help and I asked for them to treat me and they told me that they would not treat me and they called me a crybaby. They never had me sign a refusal. He's stating that I came up there out of the blue, which we're not allowed to do, you can only get there if you request some kind of medical care. So, they knew I was there in need of some kind of attention. They never treated me.

*Tr.* July 11, 2017: ECF #49 page 63 of 89.

After this hearing on July of 2017, and finding that Dr. Bitar's testimony was credible, the Court denied the sought relief and directed Mr. Carter to file another kite to seek treatment for his teeth. *Id.* at 67. Carter then filed another kite directly to the warden of HDSP seeking treatment of his dental issues on July 16, 2017, staking "I am in pain and I have been for over a year…" to which the Warden responded, "I am in receipt of your kite and Medical will be in contact to schedule you an appointment." ECF #79-1 page 117. At the July 2017 hearing, Dr. Bitar testified that somebody going through extreme pain with a tooth would be seen in "About 60 days." ECF #49 page 53. Yet, it was not until October of 2018, after this Court held another hearing on a Motion by Mr. Carter, that the Court directed the Defendants to have the Plaintiff evaluated by a dental professional to address bis dental issues within two weeks (ECF #49 at page 83) which finally occurred in the following weeks.

Carter was clearly denied meaningful relief because Dr. Bitar and Bean thwarted Carter, "from taking advantage of a grievance process through machination, misrepresentation, or intimidation" at the February 1, 2017 incident. *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). In

5

1 other words, based on his exchange with Bean and Dr. Bitar, Carter knew that if he kept
2 complaining they would refuse to treat him, and he would suffer a longer delay in obtaining the
3 help he needed.  Carter was entirely at the mercy of Dr. Bitar and Bean in seeking treatment.
4 Further, by the time Carter had filed his grievance protesting the delay in his receiving medical
5 are, he had long since exhausted his administrative remedies in full accordance with NDOC's
6 Administrative Regulations.

7 Carter was risking further retaliation from NDOC had he continued to file multiple
8 grievances related to the lack of treatment for his dental issues: AR 740.04(2)(B) states that it is
9 abuse of the inmate grievance procedure to file a grievance on "Specific claims or incidences
10 previously filed by the same incident." AR 740.09(5)(A) through (H) provides for a specific
11 disciplinary process if inmates violate the grievance procedure. This is a very real threat of
12 discipline, which can result in making prison life even more oppressive and difficult than it
13 already is. If the Plaintiff had done what the Defendants now suggest in the Motion, i.e., file
14 another grievance claim related to lack of treatment and retaliation, he could have been subject
15 to discipline under Administrative Regulation 740.09(2).  After Carter filed his first round of
16 grievances, by virtue of NDOC's own grievance procedures, there was no process reasonably
17 "available" to him. The Defendants quote *Jones v. Bock*, 549 U.S. 199, 218 (2007): "The level of
18 detail in an administrative grievance necessary to properly exhaust the claim is determined by the
19 prison's applicable grievance procedures." Yet, under AR 740.04(2), Carter had already fully
20 grieved his "specific claim" about HDSP personnel refusing to treat his serious medical need.
21 At a minimum, NDOC's own AR's are ambiguous as to whether Carter was required to
22 continue to file grievances.  Nor is the ambiguous term "specific" otherwise defined in the ARs.
23 The level of detail necessary in a grievance to comply with the grievance procedures are subject
24 to the requirements in NDOC's ARs and not the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (U.S.
25 2007).  Factual issues pertaining to the PLRA exhaustion requirement are for the Court to
26 determine. *Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008), cert. denied, 129 S. Ct. 1620
27 (2009). Ambiguity in exhaustion regulations is a problem because prisoners do not have
28 sufficient guidance on the appropriate course of action. (citing *Westefer v. Snyder*, 422 F.3d 570,

6

580 (7th Cir. 2005) (when prison officials fail to "clearly identif[y]" proper route for exhaustion, they cannot later fault prisoner for failing to predict correct choice). *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1009 (W.D. Wis. 2009).

BASED ON THE FOREGOING, the Plaintiff requests that the Motion be denied and that the Court consider sanctioning the Plaintiffs for filing a motion under Local Rule 59-1(b) that merely repeats arguments made in the underlying motion already rejected by the Court.

**DATED** this April 3, 2021

By: /s/ Luke A. Busby
LUKE A. BUSBY, ESQ
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiffs*

7

1
2                              **Exhibit List**
3
4       1.  Jan 7, 2021 Order from 9th Circuit
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing Document by:

_____  personally delivering;

_____  delivery via Reno/Carson Messenger Service;

_____  sending via Federal Express (or other overnight delivery service);

_____  depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

__X__  delivery via electronic means (fax, eflex, NEF, etc.) to:

>Amy A. Porray (Bar No. 9596)
>Deputy Attorney General
>State of Nevada
>Office of the Attorney General
>555 E. Washington Ave., Ste. 3900
>Las Vegas, Nevada 89101
>(702) 486-3216 (phone)
>(702) 486-3773 (fax)
>Email: aporray@ag.nv.gov

**DATED** this Saturday, April 3, 2021

By: /s/ Luke Busby .